22 Kan. App.2d 96 (1996)
911 P.2d 825
In the Matter of J.A.C.
No. 74,373.
Court of Appeals of Kansas.
Opinion filed February 16, 1996.
Randy M. Barker, of Kansas Department of Social and Rehabilitation Services, of Topeka, for appellant.
Patrick J. Murphy, of Vignery & Mason, L.L.C., of Goodland, for appellee natural mother.
Before BRAZIL, P.J., ELLIOTT and RULON, JJ.
*97 RULON, J.:
The Kansas Department of Social and Rehabilitation Services (SRS) appeals an order of the district court terminating the parental rights of the putative father of J.A.C. Specifically, SRS argues that the court did not have the authority to terminate the putative father's rights where there has been no petition for adoption, where the child is not being relinquished to an agency, and where no other person or agency is to assume the parental rights and responsibilities. We reverse and remand with directions.
The facts of this case are essentially undisputed.
In April 1995, the natural mother of J.A.C. filed a petition to terminate the parental rights of the putative father of J.A.C. The petition alleged that the putative father denied paternity and had never provided financial assistance to the mother or child. The petition further alleged that the putative father had executed a relinquishment of any parental rights to J.A.C.
At the time of the hearing on the petition to terminate, it was discovered that the putative father had not signed the relinquishment. After hearing argument from counsel, the district court granted the request for termination. The journal entry was filed April 25, 1995. On May 2, 1995, the putative father filed a document with the district court denying paternity and relinquishing any parental rights to J.A.C.
This is an especially perplexing problem because the district court was apparently asked to terminate the parental rights of a putative father but never heard evidence or made a finding of paternity. Further, the court was not terminating the parental rights of an unknown father because the mother always claimed to know that the putative father was in fact the natural father of J.A.C.
The mother argues that the putative father's rights were properly terminated under either K.S.A. 59-2136(e), (f), (g), or (h). Interestingly, however, she concedes that there was no valid relinquishment of parental rights under Chapter 59, nor was there a termination of parental rights of a child in need of care under Chapter 38 of the Kansas Statutes Annotated.
Interpretation of a statute is a question of law. State v. Donlay, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). On questions of law, *98 our review is unlimited. See Memorial Hospital Ass'n, Inc. v. Knutson, 239 Kan. 663, 668, 722 P.2d 1093 (1986).
"[T]he termination of parental rights is an extremely serious matter and may only be accomplished in a manner which assures maximum protection to all of the rights of the natural parents and of the child involved." In re A.W., 241 Kan. 810, 814, 740 P.2d 82 (1987). Our Supreme Court has recognized that there are three statutory methods for termination of parental rights: (1) adoption; (2) termination of parental rights; and (3) relinquishment of rights. State ex rel. Secretary of SRS v. Clear, 248 Kan. 109, 116, 804 P.2d 961 (1991). The mother believes that K.S.A. 59-2136 creates a fourth method.
K.S.A. 59-2111 through K.S.A. 59-2143 make up the Kansas Adoption and Relinquishment Act. K.S.A. 59-2136 reads in part:
"(a) The provisions of this section shall apply where a relinquishment or consent to an adoption has not been obtained from a parent and K.S.A. 59-2124 and 59-2129, and amendments thereto, state that the necessity of a parent's relinquishment or consent can be determined under this section.
....
"(d) In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent.
"(e) Except as provided in subsection (d), if a mother desires to relinquish or consents to the adoption of such mother's child, a petition shall be filed in the district court to terminate the parental rights of the father, unless the father's relationship to the child has been previously terminated or determined not to exist by a court. The petition may be filed by the mother, the petitioner for adoption, the person or agency having custody of the child or the agency to which the child *99 has been or is to be relinquished. Where appropriate, the request to terminate parental rights may be contained in a petition for adoption. If the request to terminate parental rights is not filed in connection with an adoption proceeding, venue shall be in the county in which the child, the mother or the presumed or alleged father resides or is found. In an effort to identify the father, the court shall determine by deposition, affidavit or hearing, the following:
(1) Whether there is a presumed father under K.S.A. 38-1114 and amendments thereto;
(2) whether there is a father whose relationship to the child has been determined by a court;
(3) whether there is a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction;
(4) whether the mother was [cohabiting] with a man at the time of conception or birth of the child;
(5) whether the mother has received support payments or promises of support with respect to the child or in connection with such mother's pregnancy; and
(6) whether any man has formally or informally acknowledged or declared such man's possible paternity of the child. If the father is identified to the satisfaction of the court, or if more than one man is identified as a possible father, each shall be given notice of the proceeding in accordance with subsection (f).
"(f) Notice of the proceeding shall be given to every person identified as the father or a possible father by personal service, certified mail return receipt requested or in any other manner the court may direct. Proof of notice shall be filed with the court before the petition or request is heard.
"(g) If, after the inquiry, the court is unable to identify the father or any possible father and no person has appeared claiming to be the father and claiming custodial rights, the court shall enter an order terminating the unknown father's parental rights with reference to the child without regard to subsection (h). If any person identified as the father or possible father of the child fails to appear or, if appearing, fails to claim custodial rights, such person's parental rights with reference to the child shall be terminated without regard to subsection (h).
"(h) When a father or alleged father appears and asserts parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act. If a father desires but is financially unable to employ an attorney, the court shall appoint an attorney for the father. Thereafter, the court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:
(1) The father abandoned or neglected the child after having knowledge of the child's birth;
(2) the father is unfit as a parent or incapable of giving consent;
(3) the father has made no reasonable efforts to support or communicate with the child after having knowledge of the child's birth;
(4) the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth;

*100 (5) the father abandoned the mother after having knowledge of the pregnancy;
(6) the birth of the child was the result of rape of the mother, or
(7) the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition.
"In making a finding under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."
The mother argues that K.S.A. 59-2136 applies where a valid relinquishment has not been obtained from a parent. Therefore, because a valid relinquishment was not obtained from the putative father, K.S.A. 59-2136(g) provides the procedure for terminating his parental rights. The flaw in the mother's argument is that she leaves out critical portions of the statute. The plain wording of the statute states that the provisions of K.S.A. 59-2136 apply when a relinquishment or consent to an adoption has not been obtained from a parent and when K.S.A. 59-2124 and K.S.A. 59-2129 provide that the procedures outlined in K.S.A. 59-2136 can be used in lieu of such consent or relinquishment. K.S.A. 59-2136(a).
K.S.A. 59-2124 provides that a parent may relinquish a child to an agency if the agency accepts the relinquishment in writing. "Any parent may voluntarily surrender a child to SRS, and if SRS accepts the child in writing, the department stands in loco parentis to the child and possesses all the rights of a natural parent, including the power to place the child for adoption." 248 Kan. at 116. Here, neither the mother nor putative father is relinquishing J.A.C. to SRS or any other agency. Therefore, K.S.A. 59-2124 is not applicable.
K.S.A. 59-2129 establishes conditions under which consent is given for an adoption. Again, there is no adoption in this case, and, therefore, K.S.A. 59-2136 is not applicable.
Statutes pertaining to adoption, relinquishment, or termination of parental rights are strictly construed as they all affect a parent's *101 liberty interest in the custody and control of his or her children. In re A.W., 241 Kan. at 814-15. "`It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained.' " City of Wichita v. 200 South Broadway, 253 Kan. 434, 436, 855 P.2d 956 (1993).
K.S.A. 59-2136(e) states that "if a mother desires to relinquish or consents to the adoption of such mother's child, a petition shall be filed in the district court to terminate the parental rights of the father." Obviously, the mother is not relinquishing her rights or consenting to an adoption, and, therefore, this subsection has no application.
K.S.A. 59-2136(f) merely directs who shall receive notice and how service is to be accomplished. Subsection (g) provides that if the court is unable to identify the father or any possible father who claims custodial rights, or if there is a person identified as the father who similarly fails to claim custodial rights, that father's parental rights will be terminated. However, under the plain language of subsection (a), this is only pertinent when there is a relinquishment to an agency or a consent to an adoption. Finally, subsection (h) sets out the procedure and findings necessary to terminate a father's rights where the father does appear and claims custody.
"When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." Martindale v. Tenny, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).
"`In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof in pari materia. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.'" Todd v. Kelly, 251 Kan. 512, 516, 837 P.2d 381 (1992) (quotingKansas Commission on Civil Rights v. Howard, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 [1975]).
Under the plain wording of the Kansas statutes, the district court did not have the authority under Chapter 59 to terminate the putative *102 father's parental rights except when there is a valid relinquishment to an agency that accepts the relinquishment or when an adoption is to be effected.
According to the mother, such an interpretation of the statutes is inequitable as, in practice, it means that an unwed single parent cannot terminate the rights of an absent, nonsupporting parent to become sole custodian of the child, but a complete stranger can adopt a child and become its sole parent. She makes a similar argument regarding agencies, such as SRS, claiming that if SRS or another agency can become the sole parent for a child through a termination proceeding, there is no reason a single parent should not be able to accomplish the same result.
While there is a certain logic in her argument, there is no provision in the Kansas statutes for what is essentially a declaratory judgment action by one parent against a putative parent to foreclose that person's right to come forward and claim parentage at some later date.
Reversed and remanded with directions that the termination order be vacated.