(913 P.2d 213)
Nos. 72,440
72,723

In the Matter of the Guardianship and Conservatorship of RALPH H. HECK, a Disabled Person.

Opinion filed March 15, 1996.

*Tina A. Smith* and *Gary M. Cupples*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellant.

*C. Edward Peterson*, of Finnegan, Conrad & Peterson, of Kansas City, Missouri, for appellee.

Before ROYSE, P.J., KNUDSON, J., and STEVEN R. BECKER, District Judge, assigned.

BECKER, J.: This case consolidates appeals from two orders in a conservatorship proceeding. Appellant, Ralph D. Heck, son and heir-at-law of Ralph H. Heck, appeals the probate court's order approving, in part, an accounting by the conservator, Deborah Archer, daughter of Ralph H. Heck, and a later order approving the final accounting and discharge of Archer as conservator. (Due to the similarity in names and in an effort to avoid confusion, Ralph H. Heck, father and conservatee, will be referred to as "Heck"; appellant and son, Ralph D. Heck, will be referred to as "Ralph"; and conservator and daughter, Deborah J. Archer, will be referred to as "Archer.")

The chronology of filings in the district court make up the pertinent facts.

On January 14, 1993, due to the hospitalization of Heck and his comatose state, Archer filed a petition for appointment of guardian and conservator pursuant to K.S.A. 59-3009. Notice was given to Heck through court-appointed counsel and to Heck's adult children, including Ralph, the appellant. On January 28, 1993, the district court determined Heck to be a "disabled person" as defined in K.S.A. 59-3002(a), and appointed Archer guardian and conservator. Apparently without any objection, the court entered the following orders:

"B. Deborah J. Archer is appointed as guardian over the person of Ralph H. Heck with full powers, and upon filing of an Oath, Letters of Guardianship shall be issued to her.

"C. Deborah J. Archer is appointed as Conservator of the estate of Ralph H. Heck with full powers, and upon filing of an Oath and Bond in the amount of $375,000.00, Letters of Conservatorship shall be issued to her."

Heck died on February 12, 1993. Ralph filed a petition on March 16, 1993, seeking disclosure of the existence, disposition, and status of the property of the conservatorship. In response, Archer filed an inventory and valuation and preliminary accounting on March 22, 1993.

Not until May 7, 1993, did Archer file an administrator's bond and oath of conservatorship as called for in the court's order of January 28, 1993. The court approved the bond and issued letters of conservatorship the same day the bond and oath were filed.

Four months later, on September 30, 1993, Archer filed a petition to terminate the guardianship and conservatorship, for approval of payment of fees and expenses, and for approval of her final accounting. The court issued an order terminating the guardianship/conservatorship on October 7, 1993. As part of that order, the district court scheduled a hearing on the final accounting. Minutes prior to the hearing on the final accounting, Ralph filed an answer and defense to Archer's petition for termination and payment of fees, specifically objecting to the approval of Archer's final accounting and alleging that Archer had concealed or converted some of Heck's property. This was the first filing by Ralph expressing any objection or alleging any misconduct. All previous actions by Archer and the court were without objection.

During this hearing, Archer admitted she purchased a 1988 Jeep Wrangler for $8,000 with money from one of Heck's bank accounts; the account was a payable-on-death account naming Archer as beneficiary. The vehicle was titled in her and her husband's name. No action was taken by the district court at this time. Following the hearing, the parties engaged in discovery in this case and also a pending estate administration proceeding.

On June 7, 1994, Archer filed a petition for approval of annual accounting and payment of fees and expenses. Ralph again filed a

last-minute answer and defense, asserting that disbursements had been made without legal or lawful authority and made for the personal benefit and use of Archer. Ralph alleged for the first time that Archer failed to submit the oath and bond as required by state law and converted her father's property to her own personal use. Ralph requested that Archer's claims be denied or reduced by penalties for conversion provided for in K.S.A. 59-1711.

A hearing was held on Archer's petitions on June 22, 1994. Archer admitted that two of the disbursements listed on the accounting, totalling $8,562.49, were payments for a 1988 Jeep and taxes and tags associated with that vehicle, but she did not ask that those expenses be approved as conservatorship expenses. During this hearing, Ralph challenged the propriety of the Jeep disbursements, Archer's claim for conservator's fees for her time and the time spent by Archer's attorney, and the propriety of the orders of conservatorship and disbursements prior to the issuance of the letters of conservatorship.

On June 28, 1994, the district court issued a journal entry and order of the court. In the order the district court accepted the accounting but disallowed $8,562.49 in disbursements (the Jeep-related expenses). The court approved Archer's claims of fees, albeit at a lower hourly rate, and approved the attorney fees and expenses. Ralph filed a timely notice of appeal pursuant to K.S.A. 59-2401(a)(10) and (13). That appeal is Court of Appeals case No. 72,440.

Another hearing was set by the court for July 18, 1994, on the petition to close the estate. Ralph questioned the court's jurisdiction and otherwise raised the issues pertaining to Archer's lack of authority to act as conservator, arguing that the conservatorship terminated at Heck's death on February 12, 1993. The district judge rejected the jurisdictional argument. During the hearing Ralph presented evidence regarding various items of personal property he had seen in his father's possession prior to Heck's 1988 move to Olathe. The evidence indicated that many items of personal property, mostly furniture, were not listed on the conservatorship's inventory or otherwise accounted for in the accounting. However, Ralph had had extremely limited contact with Heck

since 1988. Archer claimed she received some furniture and personal property from her father and/or grandparents prior to the conservatorship proceeding.

The court approved the final accounting and inventory and directed Archer's counsel to submit a request for final fees. On August 17, 1994, the court issued an order terminating the conservatorship and allowing the payment of fees and expenses. The order indicated that Ralph had not met the burden of proving his defenses against the accounting. Ralph filed a timely notice of appeal; that appeal is Court of Appeals case No. 72,723.

I

The first issue raised by Ralph is whether the district court had subject matter jurisdiction over the proceeding when conservatee Heck died after Archer was named conservator but prior to issuance of letters of conservatorship.

Ralph contends the conservatorship terminated on Heck's death on February 12, 1993, pursuant to K.S.A. 59-3028(a)(2). He argues that because no letters of conservatorship had been issued, the conservatorship never came into existence. Relying upon *In re Guardianship and Conservatorship of Fogle*, 17 Kan. App. 2d 357, 837 P.2d 842 (1992), Ralph contends that Archer's posting of bond and filing an oath were jurisdictional precedents to the conservatorship proceedings.

This court, in *Fogle*, held that failure to comply with the notice requirements of K.S.A. 59-3010 "deprives the court of jurisdiction over the person of the proposed ward and/or conservatee" and failure to give notice rendered the court's subsequent rulings void for lack of personal jurisdiction. 17 Kan. App. 2d at 361.

However, this case and Ralph's arguments do not concern the failure to comply with notice and due process requirements. The *Fogle* case went on to state that the actions of the guardian/conservator were valid, however, because those actions were done under the color of the authority granted the district court. 17 Kan. App. 2d at 362. Ralph's reliance on *Fogle* is misplaced since the jurisdictional issue was limited to personal jurisdiction. There is no dispute in this case that the court had jurisdiction over Heck.

K.S.A. 59-3009 provides that any person may file in the district court of the county of the residence or presence of the proposed conservatee a verified petition for appointment of conservator. There is no dispute that Heck was a Johnson County resident and had been since 1988. Therefore, the district court clearly had subject matter jurisdiction over the estate when the petition was filed.

Ralph contends that the court's subject matter jurisdiction terminated upon Heck's death by operation of law. K.S.A. 59-3028(a) states that "conservatorship of a conservatee shall terminate upon any of the following conditions: . . . (2) upon the death of the ward or conservatee." To address Ralph's argument, therefore, the court must interpret 59-3028 to determine whether its provisions terminate the court's jurisdiction.

Interpretation of a statute is a question of law and subject to unlimited review by this court. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). In interpreting the Act for Obtaining a Guardian or Conservator (Act), K.S.A. 59-3001 *et seq.*, the entire act must be read in pari materia to reconcile and harmonize the various provisions when possible. See *In re Stremel*, 233 Kan. 136, 140, 660 P.2d 952 (1983).

By its plain terms, 59-3028 terminates conservatorships automatically upon the death of the conservatee. Under the Act, however, a termination of the conservatorship does not immediately terminate the jurisdiction of the district court or the legal obligations of the conservator. Other provisions of the Act clearly require ongoing participation by the court and the conservator in closing the proceeding. K.S.A. 59-3029(b) requires every conservator to present a verified final account and a petition to settle and allow payment "[a]t the termination of the conservatorship." The conservator cannot be discharged from his responsibilities until after all of the property of the conservatorship estate has been adequately accounted for and delivered to the person entitled to receive the same. K.S.A. 59-3031. The Act also expressly permits the court, in cases where the conservatee has died, to order the conservator to pay "appropriate funeral expenses and the expenses of the conservatee's last illness." K.S.A. 59-3026. The Supreme Court

has recognized that while 59-3028 causes a conservatorship to be terminated upon the death of the conservatee, there remains the final step of the conservator's accounting and settlement. *In re Estate of Ingram*, 212 Kan. 218, 224, 510 P.2d 597 (1973); see also 39 C.J.S., Guardian & Ward § 38 (all powers and duties of the guardian normally cease upon the death of the ward, except the duty to make a proper accounting and settlement with the court).

Reading the Act in its entirety, it is clear that 59-3028 does not terminate the subject matter jurisdiction of the court once jurisdiction is properly invoked under 59-3009. There is no authority that the issuance of letters of conservatorship constitutes a prerequisite to the jurisdiction of the court. The letters of conservatorship, which are issued after the conservator files the oath and bond, only relate to the conservator's judicially recognized authority to act on behalf of the conservatee. K.S.A. 59-3014(d); see 39 C.J.S., Guardian & Ward § 34.

In this case, subject matter jurisdiction attached at the time the proceeding was properly commenced on January 14, 1993, and continued until the proceeding was properly concluded by an accounting and discharge. Under the Act, a conservatorship proceeding can be terminated in only two ways. If the court finds at the original hearing that the proposed conservatee has not been shown to be disabled by clear and convincing evidence, the court must enter an order terminating the proceeding. K.S.A. 59-3013. If the conservatee is found to be disabled, however, the conservatorship proceeding can only be terminated upon the filing and settling of the conservator's final accounting and the discharge of the conservator. K.S.A. 59-3031.

Under the statutory scheme, even if an appointed conservator never files a bond or oath and never assumes control over the assets of the conservatee, she arguably would have the obligation under Kansas law to make an accounting annually and at the termination of the conservatorship. The validity (or lack thereof) of the conservator's actions in controlling the assets of the conservatee should not affect whether the court has jurisdiction over the proceeding. Accordingly, the district court had subject matter jurisdiction over

the proceeding. The trial court did not err in rejecting Ralph's jurisdictional argument.

II

Ralph next argues that the court lacked "jurisdiction" to approve the accounting and discharge Archer from her conservatorship obligations under the circumstances of this case. As discussed above, it is clear that the district court had subject matter jurisdiction over the proceeding even after Heck's death. Appellant's argument can be construed, however, as challenging the court's authority to approve the accounting as opposed to attacking the court's subject matter jurisdiction. Ralph's argument essentially is that the district court was prohibited by statute from approving the accounting because Archer did not timely comply with the court's order requiring the oath and bond or with K.S.A. 59-3014, and, because Archer's actions were null and void on account of Heck's intervening death.

The record reflects that disbursements were made from the conservatee's estate as early as January 14, 1993 (the date the petition for appointment of guardian and conservator was filed). Disbursements continued to be made regularly both before and after the order appointing Archer as conservator (January 27, 1993), and before and after letters of conservatorship were issued (May 7, 1993). During the hearings before the district court, Ralph specifically objected only to a few of those disbursements. Only one disbursement prior to the issuance of letters of conservatorship was challenged: a February 1993 payment to the attorney representing Archer in the conservatorship. Several post-letter disbursements were challenged, including the Jeep expenses the district court disallowed, the payment for the conservator's time, and the conservator's attorney fees.

Once a petition for appointment has been filed and heard, K.S.A. 59-3014(d) controls the actual appointment of the conservator. That statute provides:

"Upon the filing of a bond in such an amount as the court may direct and an oath according to law, letters of conservatorship shall be granted. . . . If the court . . . has made a finding that the disabled person is unable to make any decisions which affect the property of the disabled person . . . a conservator

shall be possessed of all powers and duties of a conservator as set out in K.S.A. 59-3019 and amendments thereto."

Under this statute, letters of conservatorship cannot be issued without the conservator filing proof of the statutorily required bond. The Act, however, does not provide any specific deadline for the filing of the conservator's bond and oath. This should be compared with K.S.A. 59-2227 of the probate code, which requires the person appointed as executor or administrator to qualify within 10 days or risk the granting of letters to another. In addition, the Act's definition of "conservator" does not directly refer to the bond or the oath, nor does it refer to the possession of letters of conservatorship. K.S.A. 59-3002(f).

As a general rule, unless the appointed conservator has complied with this condition precedent, he is not entitled to act as conservator or to take possession of, and control, the property of his ward. 39 C.J.S., Guardian & Ward § 31, p. 69. However, there are no Kansas cases interpreting 59-3014 and the effect, if any, of a conservator's delay in filing a bond and oath. This is a case of first impression under the Act.

Ralph argues that the requirement of posting a bond and filing an oath under 59-3014 is mandatory, rather than directory, and that failure to comply with the mandatory requirements nullifies the purported conservator's actions. As noted by this court in *Fogle*:

" 'No absolute test exists by which it may be determined whether a statute is directory or mandatory. Each case must stand largely on its own facts, to be determined on an interpretation of the particular language used. . . . It has been said that whether a statute is directory or mandatory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and a statute is regarded as directory where no substantial rights depend on it, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results.' " 17 Kan. App. 2d at 360 (quoting *Wilcox v. Billings*, 200 Kan. 654, 657, 438 P.2d 108 [1968]).

It is difficult to categorize the filing of a bond as a "matter of convenience." Clearly, the posting of a bond is significant in order to protect the conservatee's rights by allowing another to control his estate. On the other hand, the filing of an oath is not an act that would impact substantial rights.

Even if statutory language requiring the filing of a bond and oath is mandatory rather than directory, this determination does not resolve this case. The record reflects that Archer actually filed an oath and proof of a bond approved by the district court. The real issue is whether Archer's delay in complying with the statute invalidates her actions or deprives her of the right to seek approval of her disbursements.

It appears that Kansas law regarding fiduciaries supports the validity of the fiduciary's actions prior to posting of a bond by finding the actions to be voidable by the court, but not void. See *Morris v. Winderlin*, 92 Kan. 935, 940, 142 Pac. 944 (1914); *Hunt v. Insley*, 56 Kan. 213, 216, 42 Pac. 709 (1895).

The current statutes providing for appointment of conservators have an inherent delay built into the proceedings. There is up to a 14-day delay between the filing of a petition for the appointment of a conservator and the hearing on the petition. K.S.A. 59-3010(a)(1). This hearing can be continued upon order of the court. K.S.A. 59-3011(a)(2).

Based upon the procedures required by the Act, did the legislature intend to prohibit an appointed conservator from taking any action on behalf of the conservatee prior to the posting of a bond and receipt of the letters of conservatorship? We think not. As a practical matter, a proposed conservator should not have to arrange for a bond prior to the court's order determining that the conservatee is disabled. In addition, it is not unreasonable to assume that a person seeking appointment as conservator may be required to expend money on behalf of the proposed conservatee prior to his official appointment and/or the issuance of letters of conservatorship.

The Act has built-in protections which militate against a restricted reading of the bond requirement. During a reasonable delay in filing the appropriate bond and oath, the interests of the

conservatee (and his ultimate heirs) can be adequately protected by the court's general supervisory authority over the conservator. The district court has broad powers to remove the conservator and reduce or order forfeiture of the conservator's compensation when there has been a breach of duty. K.S.A. 59-1711; *In re Conservatorship of McCoy*, 19 Kan. App. 2d 31, 34-35, 861 P.2d 1378 (1993). Likewise, a conservator cannot be discharged from his responsibilities and liabilities until a final accounting has been filed, notice given to interested parties, a hearing held, and approval obtained from the district court. See K.S.A. 59-3030; K.S.A. 59-3031; *In re Conservatorship of Holman*, 18 Kan. App. 2d 173, 177, 849 P.2d 140 (1993). Therefore, a conservator who fails to immediately post a bond runs the risk of being removed and/or having his compensation reduced or forfeited. Moreover, the judicially appointed conservator falls within the definition of "fiduciary," whether or not letters have been issued, and can be held liable under K.S.A. 59-1704 if property of the conservatee is converted.

In this case, the district court issued letters of conservatorship 100 days after the initial appointment of Archer and 85 days after Heck's death. Ralph did not appeal from the issuance of the letters of conservatorship even though 59-2401(a)(2) permits appeals from any order appointing a fiduciary "other than a special administrator." Ralph did not seriously raise any question of the court's jurisdiction until the July 1994 hearing.

From and after May 7, 1993, Archer possessed the letters of conservatorship and acted under the color of authority granted by the district court, and her actions would be valid, subject to the review of the court. See *Fogle*, 17 Kan. App. 2d at 362 (actions of guardian were valid when guardian acted under color of authority granted by the district court even though appellate court found personal jurisdiction lacking).

Under the circumstances of this case, we conclude that the Act does not prohibit a district court from considering and approving a conservator's disbursements and accounting solely because the conservator did not file a bond or oath timely. Recognizing the potential for abuse by conservators, the district court has authority under 59-3031 to closely scrutinize the disbursements both before

and after the posting of the bond to determine their allowance. This provides a sufficient safeguard from such abuse.

### III

Based upon the above conclusions, the final issue of whether the district court erred in allowing expenses and discharging Archer as conservator must be addressed.

At the district court level, Ralph relied on Archer's delay in filing a bond and oath and alleged conversion of certain personal property in challenging the final accounting and request for discharge of conservatee. On appeal, Ralph again argues the court's jurisdiction and authority to enter such orders. Ralph does not challenge the appropriateness or validity of the disbursements and claims submitted.

Where the appellant fails to brief an issue, the issue is waived or abandoned. *Pope v. Ransdell*, 251 Kan. 112, 119, 833 P.2d 965 (1992). Moreover, a point incidentally raised but not argued is deemed abandoned. *McKissick v. Frye*, 255 Kan. 566, 578, 876 P.2d 1371 (1994).

Even assuming that Ralph's brief can be construed to raise this issue on appeal, the district court did not err. K.S.A. 59-1717 provides that "[e]very fiduciary shall be allowed his or her necessary expenses incurred in the execution of his or her trust, and shall have such compensation for services and those of his or her attorneys as shall be just and reasonable." Determination of the reasonableness of such expenses are subject to the trial court's discretion and will be reversed only when that discretion is abused. *In re Conservatorship of L.M.S.*, 12 Kan. App. 2d 725, 729, 755 P.2d 22 (1988).

In this case, there was no real evidence that Archer converted any of her father's accounts to her own use prior to his death. The record reflects that all of the expenditures, except those related to the Jeep, were normal and reasonable expenses to maintain Heck during his illness and to pay his funeral expenses and final medical bills. As noted above, the Jeep was purchased with money from a payable-on-death account which listed Archer as beneficiary. While it certainly would have been more prudent to delay the pur-

chase of the Jeep until after the conservatorship was closed, it does not violate the conversion statute, 59-1704.

Ralph also alleged that Archer converted family heirlooms or Heck's personal property. Based upon the minimal evidence on this issue, the district court found that Ralph failed to carry his burden of proof. A negative finding that a party has not carried the burden of proof will not be disturbed absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *Morrison v. Watkins*, 20 Kan. App. 2d 411, 426, 889 P.2d 140, *rev. denied* 257 Kan. 1093 (1995). Ralph has presented no evidence to overturn the district court's negative finding on this issue.

Finally, Ralph failed to establish that the district court abused its discretion in the amount of fees it allowed to be paid to Archer or the attorney representing her as conservator. The amount allowed was not excessive in light of Ralph's challenge to the conservatorship, the delays caused by discovery, Ralph's late filing of defenses to the accounting, and the multiple hearings held in this matter. " 'Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court.' " *In re Marriage of Wade*, 20 Kan. App. 2d 159, 168, 884 P.2d 736 (1994) (quoting *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 [1973]).

Affirmed.