(934 P.2d 995)

No. 77,255

IN THE INTEREST OF A.N.P.

Opin-
ion filed March 21, 1997.

*Mark Davis*, of Kansas City, for appellant.

*John B. Knudsen*, assistant district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before MARQUARDT, P.J., RULON, J., and TIMOTHY G. LAHEY, District Judge, assigned.

RULON, J.: Appellant James McGinnis appeals from the district court's order terminating his parental rights as the alleged father of A.N.P. We affirm.

A detailed statement of the facts is not needed for us to resolve the paramount issue raised in this appeal. Facts necessary to our decision are found in our following discussion.

## SUBJECT MATTER JURISDICTION

In his first argument on appeal, McGinnis contends the district court lacked subject matter jurisdiction over him because he was not a "parent" as defined under the Kansas Code for Care of Children (KCCC), K.S.A. 38-1501 *et seq.* McGinnis relies on various provisions in the KCCC and the Kansas Parentage Act (KPA), K.S.A. 38-1110 *et seq.*

First, we must consider and construe various provisions of the KCCC. "Interpretation of a statute is a question of law and subject to unlimited review by the appellate courts." *In re Guardianship & Conservatorship of Heck,* 22 Kan. App. 2d 135, Syl. ¶ 1, 913 P.2d 213 (1996).

The various principles of statutory construction were discussed by this court recently in *In re J.A.C.,* 22 Kan. App. 2d 96, 911 P.2d 825 (1996). The primary rule of statutory construction is that the intent of the legislature governs if such intent can be determined. 22 Kan. App. 2d at 101. However, when a statute is not ambiguous, " 'the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be.' [Citation omitted.]" 22 Kan. App. 2d at 101.

The parameters of the district court's jurisdiction under the KCCC are set forth in K.S.A. 38-1503. Under that statute, district courts are given original jurisdiction, subject to the Indian Child Welfare Act and the Uniform Child Custody Jurisdiction Act (UCCJA), "to receive and determine proceedings under this code." K.S.A. 38-1503(b). Proceedings under the Code include any matter "concerning any child who appears to be a child in need of care." K.S.A. 38-1503(a).

Under K.S.A. 38-1503, the district court's subject matter jurisdiction in child in need of care (CINC) cases is based upon the presence of the child in Kansas—*i.e.,* jurisdiction under the UCCJA—and the status of the child as one who appears to be a child in need of care. The status and identity of the parents is not

relevant to the court's *subject matter* jurisdiction. There is no dispute in this case that A.N.P. was born at Bethany Medical Center in Kansas City, Kansas, shortly before the CINC petition was filed and that, based upon the presence of cocaine in her system at the time of birth, she appeared to be a child in need of care. Consequently, under K.S.A. 38-1503, the district court had subject matter jurisdiction over A.N.P.'s proceeding until such proceeding was terminated under K.S.A. 38-1503(c) or (d).

To some extent, McGinnis' jurisdiction arguments are similar to those earlier rejected by this court. In *In re Guardianship & Conservatorship of Heck*, 22 Kan. App. 2d 135, the heir of a conservatee alleged the district court lacked subject matter jurisdiction in a guardianship case because the conservatee died prior to the issuance of letters of conservatorship and the posting of the bond by the conservator. In *Heck*, we noted the court's subject matter jurisdiction, as set forth by statute, depended solely on the presence or residence of the proposed conservatee, and once jurisdiction was properly invoked, the court's jurisdiction continued until terminated as provided by the statutes. 22 Kan. App. 2d at 139-40.

As in *Heck*, McGinnis' arguments are more properly treated as a challenge to the district court's *authority* under the KCCC rather than a challenge to its subject matter jurisdiction. *Cf. In re Guardianship & Conservatorship of Heck*, 22 Kan. App. 2d at 142. In this regard, McGinnis' arguments are construed as contending that the district court did not have the authority to terminate the parental rights of fathers in CINC proceedings unless paternity is presumed, proven, or unchallenged.

In his argument, McGinnis cites to the definition of "parent" in the KCCC. The definition statute provides, in relevant part, as follows:

"As used in this code, *unless the context otherwise indicates:*

. . . .

"(d) 'Parent,' when used in relation to a child or children, includes a guardian, conservator and every person who is by law liable to maintain, care for or support the child." (Emphasis added.) K.S.A. 1996 Supp. 38-1502.

McGinnis argues that unless he is the presumed father under K.S.A. 1996 Supp. 38-1114 or his paternity is actually determined

under the KPA, he has no legal obligation toward A.N.P. Mc-Ginnis claims he is not a "parent" and the district court has no power to terminate any rights he may or may not have with respect to A.N.P.

The definition of "parent" in the KCCC is ambiguous and does not specifically require an actual determination of paternity. The entire Act speaks broadly of "parents." If only presumed or determined fathers are "parents" under the KCCC, then unknown fathers and alleged but unproven fathers would not have to be named in the CINC pleadings, K.S.A. 38-1531(b)(1)(B); would not receive summons notifying them of the action, K.S.A. 38-1532(a) and K.S.A. 38-1533(a); and would not be entitled to appointed counsel, K.S.A. 38-1505(b).

Narrowly interpreting "parent" under the KCCC to include only admitted, proven, or presumptive fathers would undermine the purpose of the Code by unduly limiting the State's power when dealing with children with unknown or uncertain paternity. However, the narrow definition of "parent" proposed by McGinnis would, in fact, preclude a court from fully handling the care of all children whose fathers are unknown or uncertain.

We are convinced the Kansas Legislature intended to include alleged, nonpresumptive fathers as "parents" under the KCCC. A strong indicator of the legislature's intent is the KCCC's statutory provision dealing with parentage issues. Under K.S.A. 38-1516(a) and (b), if a parentage issue arises prior to a CINC adjudication, the court may require the pleadings to be amended to name an additional party and/or for service of process to be made on an additional party. That statute additionally provides:

"If it appears that there is a dispute regarding parentage which should be adjudicated, the court *shall* stay *child support proceedings*, if any are pending in the case, with respect to that alleged parent and child relationship until the dispute is resolved by agreement, by a separate action under the Kansas parentage act, or otherwise. *Nothing in this subsection shall be construed to limit the power of the court to carry out the purposes of the Kansas code for care of children.*" (Emphasis added.) K.S.A. 38-1516(c).

One of the purposes of the KCCC is to have all CINC proceedings "disposed of without unnecessary delay." K.S.A. 38-1551(a).

" ' "In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law." ' [Citation omitted.]" *In re J.A.C.*, 22 Kan. App. 2d at 101.

McGinnis argues that interpreting the KCCC to give the district court authority over alleged (but unproven) fathers would be a statutory construction which would lead to " 'uncertainty, injustice or confusion.' " See *Coe v. Security National Ins. Co.*, 228 Kan. 624, Syl. ¶ 2, 620 P.2d 1108 (1980). McGinnis argues the child will be penalized because she will never know who her true father is, citing *Jensen v. Runft*, 252 Kan. 76, 843 P.2d 191 (1992). In *Jensen*, however, the issue was focused on whether it was in the best interests of the child to order paternity testing. 252 Kan. at 79-80. Here, A.N.P.'s guardian ad litem did not object to testing, but did not request such testing. Clearly, if a guardian ad litem believes it is in the child's best interests to verify the identity of his/her father, the guardian ad litem can seek a determination of paternity.

McGinnis further argues that the best interests of the State are served by requiring a paternity determination because the State can then seek child support from the proven father. This argument fails, however, in this case because the State made it clear at the initial CINC hearing that the State intended to request termination of all parental rights in conjunction with the CINC proceeding as permitted by K.S.A. 38-1581(a).

McGinnis additionally argues that broadly reading "parent" to include alleged fathers was unfair to putative fathers who are at risk of ignoring their own child or accepting responsibility for another man's child. As we understand, McGinnis argues the district court's interpretation of the statute deprives him of rights he may have to A.N.P. because he has insufficient funds for paternity testing. These arguments are devoid of legal merit.

Nothing in the KCCC precludes an alleged father from initiating an action under the KPA to prove or disprove his parentage in

order to decide what course of action he wishes to take in the CINC proceeding. Under the KPA, the district court "shall order the mother, child and alleged father to submit to genetic tests" whenever paternity of the child is in issue. K.S.A. 1996 Supp. 38-1118. The KPA further gives the district court the power to assess such costs among the parties or "order the proportion of any indigent party to be paid from the general fund of the county." K.S.A. 38-1122.

McGinnis' arguments gloss over the fact that at his request, the district court ordered the parties to submit to genetic testing and directed him to arrange the same in February 1996. The court's order required McGinnis to assume financial responsibility for the tests *unless* he provided additional evidence to support his unsubstantiated claim of indigency. In addition, the court continued the trial date from March to May 1, 1996. There is no dispute that at all critical times McGinnis was no longer in custody and was earning at least some wages.

Instead of arranging for these tests or immediately submitting information to establish his indigency, McGinnis did nothing. He waited until the end of April, only 1 week before the trial, to again request paternity testing. In his motion, McGinnis again failed to present any evidence of indigency other than stating he was incarcerated. The court's determination that McGinnis knowingly failed to carry out the court's February order is supported by the record.

Under the facts presented, McGinnis seeks to avoid termination of his potential parental rights and deprive SRS of the ability to find A.N.P. a permanent or long-term placement by ignoring the court's order regarding paternity testing. Such conduct undermines the purposes of the KCCC and effectively allows an alleged father to continuously delay an ultimate adjudication and disposition of the case.

Unquestionably, the district court did not err in denying McGinnis' motion to dismiss for lack of jurisdiction. The KCCC provides the district court authority to conduct CINC proceedings and termination actions with "alleged" fathers. Such fathers who question their obligations as to these troubled children would have the opportunity to use the KPA to seek paternity testing and, if in-

digency is established, request the court to assess the costs of the testing against a governmental fund. Clearly, the rights of the alleged father are protected, and the interests of the State and the child in prompt CINC proceedings are likewise protected.

## SUBSTANTIAL COMPETENT EVIDENCE

Next, McGinnis contends the State failed to prove the allegations in the petition requesting termination of his parental rights. We firmly disagree.

The standard of review in a case involving the termination of parental rights is whether there is substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that the parental rights should be terminated. *In re S.M.Q.*, 247 Kan. 231, 240, 796 P.2d 543 (1990). Although the State has the burden to prove "unfitness" by clear and convincing evidence before the district court, the clear and convincing standard does not affect this court's scope of review. 247 Kan. at 238, 240. This court cannot reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. This court must review the evidence in the light most favorable to the party prevailing below. 247 Kan. at 234; *In re T.D.W.*, 18 Kan. App. 2d 286, 289-90, 850 P.2d 947 (1993).

The parent must be found "unfit" by the trial court before parental rights may be severed. K.S.A. 1996 Supp. 38-1583(a); *In re M.M.*, 19 Kan. App. 2d 600, 607, 873 P.2d 1371 (1994). " 'The term "unfit" is defined to include inherent mental and emotional incapacity to perform parental obligations which can constitute such breach of parental duty as to make the parents unfit to be entrusted with custody of their child.' [Citation omitted.]" *In re N.D.G.*, 20 Kan. App. 2d 17, 21, 883 P.2d 89, *rev. denied* 256 Kan. 995 (1994).

Here, the district court found that McGinnis' conduct supported termination of any parental rights he might have under K.S.A. 1996 Supp. 38-1583(b)(4), (7), and (8) and K.S.A. 1996 Supp. 38-1583(c)(1)-(4). The court based these findings on McGinnis' failure to verify his parental status, his incarceration, and his failure to

exercise visitation while he was released from jail. The court additionally found there was no evidence that McGinnis had attempted to learn parenting skills while incarcerated. McGinnis does not directly contradict the court's findings about these factors. Consequently, this issue is summarily affirmed.

Affirmed.