(163 P.3d 343)
No. 97,130

LOUISE LYONS, by and through JIM LAWING, TRUSTEE of the BABE
LYONS TRUST, *Appellant*, v. ROY HOLDER, *Appellee*.

Opinion filed July 20, 2007.

*Jim Lawing*, of Wichita, for appellant.

*Larry D. Toomey*, of Toomey Pilgreen, LLC, of Wichita, for appellee.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

GREENE, J.: Louise Lyren "Babe" Lyons, by and through Jim Lawing, Trustee of the Babe Lyons Trust, appeals the district court's judgment as a matter of law in favor of defendant J. Roy Holder, former trustee of the trust, on her claims of breach of fiduciary duty and conversion. Lyons argues on appeal that Holder improperly paid himself over $56,000 as a fee for nearly 12 years of service as trustee before resigning and that the district court erred in dismissing her claims after the close of her evidence at trial. We conclude that the district court erred in granting judgment against her as a matter of law, so we reverse and remand for further proceedings.

### Factual and Procedural Background

Sometime in early 1992, the Babe Lyons Trust was created naming Holder as primary trustee and designating Lyons as primary beneficiary. The trust instrument provided the trustee with broad powers to manage the trust property and provided that he was entitled to reasonable compensation for his services.

"My trustee is to serve with reasonable compensation. Additionally, all expenses of any type incurred by my trustee in carrying out the duties under this trust shall be paid for from the trust."

Although the record is not entirely clear on the value of property subject to the trust, counsel advised this court during oral argument the property was valued at approximately $300,000 at inception and approximately $600,000 at time of trial.

It was undisputed that during most of the life of the trust, Holder regularly visited Lyons, helped with her care, managed trust assets, made required accountings, and otherwise performed services as trustee without complaint. Throughout the first 11 years of the trust, Holder never discussed, requested, or paid himself fees permissible under the express provision of the trust.

The parties began to be at odds in 2003, after Lyons became concerned about a transfer of funds from one trust account to another without her knowledge, and after Holder became concerned about a relationship Lyons had engendered with Vicky Greer, apparently believing that Greer might "take advantage" of the elderly Lyons. The relationship between trustee and beneficiary deteriorated rapidly, until Holder cashed out a trust certificate of deposit, placed $67,000 in a trust account, paid himself $56,850 for trustee fees for his 12 years of service, and $5,000 for attorney fees. Lyons was never consulted about these transactions, and they were followed by Holder's resignation as trustee in February 2004.

In November 2004, Lyons filed suit against Holder claiming Holder breached fiduciary duties he owed to her by failing to discuss or notify her of his compensation prior to transferring funds in order to pay himself in excess of $50,000 and that the transfer of funds in payment of these fees constituted conversion. Lyons requested the trust assets be restored and sought other damages for the purported conversion and breach of duty. Holder filed an answer, denying Lyons' claims. Holder asserted he had managed the trust for just under 12 years and the payment to himself equated to $4,166.66 per year for managing a trust valued in excess of $600,000.

A pretrial conference was held approximately 1 year after the lawsuit was filed. In the pretrial order, Lyons claimed Holder breached his fiduciary duties (1) by transferring money out of her checking account, resulting in the account becoming overdrawn; (2) by misappropriating over $55,000 in trust assets by paying himself compensation; and (3) by never discussing with her what an appropriate compensation would have been for his services. Lyons also claimed Holder waived any claim for compensation except for calendar year 2003 and such claims were barred by the statute of

limitations. The issues of law were identified as (1) whether Holder's actions in taking no compensation constituted a waiver of any right to compensation; (2) whether the statute of limitations limited Holder's right to compensation for serving as trustee; and (3) what sum, if any, should Lyons recover.

The district court conducted a bench trial and, at the conclusion of Lyons' evidence, granted Holder's motion for judgment as a matter of law. The court held that there was no evidence that the amount Holder paid himself as a trustee fee was unreasonable and found that "a waiver is not to be inferred from [trustee's] declining or failure to take a fee for the previous period." The court held other issues were not properly before the court. A journal entry of judgment was filed thereafter, stating that "as a matter of law . . . plaintiff has wholly failed to present evidence, facts or law upon which judgment could be granted in favor of plaintiff."

When the journal entry was filed, Holder filed a motion for attorney fees claiming the suit was "spurious" and that he was entitled to attorney fees under both the terms of the trust and the Kansas Uniform Trust Code. This motion was denied.

Lyons also filed a timely posttrial motion for judgment notwithstanding the prior ruling. Lyons repeated her claims that the Kansas Uniform Trust Code implicitly prohibited unilateral actions by trustees to pay themselves compensation and provided for a process if the parties do not agree what are reasonable trustee fees. Following a hearing, this motion was also denied. The court again found there was no evidence indicating Holder's fee was unreasonable and, based on the judge's own experience, Holder's fee was on "the high end of reasonable" but not unreasonable.

Lyons timely appeals.

### Did the District Court Err in Granting Judgment Against Lyons After the Close of Her Evidence at Trial?

When the district court conducts a bench trial, K.S.A. 60-252(c) governs the court's authority to render judgment prior to the conclusion of trial and provides in material part:

"(c) *Judgment on partial findings.* If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue,

the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

In ruling on a motion for involuntary dismissal (now judgment on partial findings) during a bench trial, the district judge has the power to weigh and evaluate the evidence in the same manner as if he or she were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case. *In re Estate of Ewers*, 206 Kan. 623, 626, 481 P.2d 970 (1971). When the district court has made such findings and conclusions, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and are sufficient to support the conclusions of law. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). Appellate review of the conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004). After a bench trial, an appellate court has the power to correct errors of law, including those that may infect a so-called mixed question of law and fact, particularly where the trial court's findings are based on a misunderstanding of the governing rule of law. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501, 80 L. Ed. 2d 502, 104 S. Ct. 1949 (1984); see also *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 173 (10th Cir. 1992) (determination of waiver is a mixed question of fact and law; appellate court reviews application of facts to the law under a de novo standard). A negative finding that a party has not carried his or her burden of proof will not be disturbed on appeal absent arbitrary disregard of undisputed evidence or extrinsic considerations such a bias, passion, or prejudice. *In re Guardianship & Conservatorship of Heck*, 22 Kan. App. 2d 135, 147, 913 P.2d 213 (1996).

Accordingly, we apply these standards to each of Lyons' claims for relief to determine whether judgment as a matter of law was proper.

### *Purported Violations of the Kansas Uniform Trust Code*

From the outset of the litigation, Lyons claimed Holder's actions breached his fiduciary duty as a trustee. On appeal, Lyons claims

Holder's payment of his own fees was a breach of loyalty voidable under K.S.A. 2006 Supp. 58a-802, which provides:

"(a) A trustee shall administer the trust consistent with the terms of the trust and solely in the interests of the beneficiaries.

"(b) . . . [A] sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict of interest between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless:

(1) The transaction was authorized by the terms of the trust;

(2) the transaction was approved by the court;

. . . .

(4) the beneficiary consented to the trustee's conduct, ratified the transaction or released the trustee . . . ."

That same statute specifically states that it does not preclude "payment of reasonable compensation to the trustee" if such transaction was "fair to the beneficiaries." K.S.A. 2006 Supp. 58a-802(h).

This provision fails as a basis for Lyons' claims. Although the payment of trustee fees was arguably a "transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account," the transaction was generally "authorized by the terms of the trust" and not precluded by the statute if "fair" to beneficiaries. Although "fair" is not defined by the trust provision, we note that Lyons concedes on appeal that the amount of the fees was not unreasonable; her claim was that it was unfair for the trustee to take no compensation for 12 years and then take fees for that period at the conclusion of his service. Because the trust provision as to trustee compensation fails to provide for any specific procedure or period for compensation, and there is no contention as to unreasonableness of the fees taken, the transaction was sufficiently "authorized" and "fair" so as to escape voidability under K.S.A. 2006 Supp. 58a-802(b). Having rejected Lyons' claim sounding in breach of fiduciary duty, we view Lyons' claim exclusively as one sounding in waiver of the contractual right to compensation but without basis in the Kansas Uniform Trust Code.

## Compensation Barred by Statute of Limitations

Lyons next claims that Holder's payment of his own fees after 12 years was barred by K.S.A. 60-511(4), which provides that "[a]n

action upon the official bond or undertaking of an executor, administrator, conservator, sheriff, or any other officer . . ." must be brought within 5 years.

Lyons' reliance on subsection (4) of this statute is misguided; Holder's right to compensation is not based on an official bond or undertaking.

"A bond is an obligation in writing and, as distinguished from an undertaking, a bond binds the signatories to pay a sum certain upon the happening of an event; an undertaking is an obligation in writing binding the signatories to pay such an amount as is adjudged due." 12 Am. Jur. 2d, Bonds § 1.

The statute of limitations relied upon by Lyons pertains to suits seeking to recover from bonds guaranteeing the performance of fiduciaries, officers, and others, such as contractors. See *Bob Eldridge Constr. Co. v. Pioneer Materials, Inc.*, 235 Kan. 599, 606, 684 P.2d 355 (1984) (material supplier's suit on surety bond issued to guarantee contractor's payments governed by this statute); *Zurbucken v. Glens Falls Indemnity Co.*, 158 Kan. 599, 601, 149 P.2d 617 (1944) (action on bond of deputy sheriff was conditioned on faithful performance of duty to honestly account for all money that might come into his hands in his official capacity governed by this statute).

By its plain terms, K.S.A. 60-511(4) does not apply to Holder's claim to compensation from the trust. For these reasons, Lyons' argument based upon the statute of limitations fails.

### Compensation Barred by Waiver

A trustee entitled to compensation under the terms of a trust may waive such compensation. See Restatement (Second) of Trusts § 242, comment j (1957) (waiver may be found based upon some manifestation of intent to waive or a change in position by the beneficiary in reliance on the trustee's failure to withhold compensation); Restatement (Third) of Trusts § 38, comment g (2001) (waiver may be inferred from conduct in some circumstances).

Many courts have recognized that a trustee can waive compensation under a variety of circumstances. Explicit indications to the beneficiary that the trustee would not or is not charging for services is sufficient to establish a waiver of compensation. See *McCormick*

*v. McCormick*, 180 Ill. App. 3d 184, 209, 536 N.E.2d 419 (1988) (citing letter from trustee to beneficiary). A failure to include trustee compensation in required annual accountings with the court has been held to constitute a waiver to fees for the time periods covered by the accounting if there were sufficient funds to pay for such services during those years. See *Hardy v. Hardy*, 222 Ark. 932, 263 S.W.2d 690 (1954) (trustee not only failed to pay herself, but advised beneficiary she did not intend to take compensation and beneficiary testified he relied upon that representation).

Under Kansas law, " '[w]aiver is ordinarily the intentional relinquishment of a known right and is a voluntary act.' [Citation omitted.]" *Sultani v. Bungard*, 35 Kan. App. 2d 495, 498, 131 P.3d 1264 (2006). Although waiver must be knowing and intentional, *intent may be inferred from conduct*, and the knowledge may be actual or constructive, but " 'both knowledge and intent are essential elements.' [Citation omitted.]" 35 Kan. App. 2d at 498.

Here, the district court found as a matter of law that "waiver is not to be inferred from [Holder's] declining or failure to take a fee for the previous period." We fundamentally disagree with this holding. Kansas law has consistently recognized that intention to relinquish a known right may be inferred from conduct. *Harvester, Inc. v. Goodyear Tire & Rubber Co.*, 4 Kan. App. 2d 363, 365, 606 P.2d 498 (1980). Knowledge of a contractual right may be waived by mere failure of assertion for 15 years. *Stratmann v. Stratmann*, 6 Kan. App. 2d 403, 411, 628 P.2d 1080 (1981); see also *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 90, 367 P.2d 44 (1961) (right to credit against judgment waived by inaction); *City of Wamego v. L.R. Foy Constr. Co.*, 9 Kan. App. 2d 168, 675 P.2d 912, *rev. denied* 234 Kan. 1076 (1984) (right to arbitration waived by acts and failure to act); 28 Am. Jur. 2d, Estoppel and Waiver §209 (implied waiver inferred by implication through a party's conduct inconsistent with an intent to assert a right).

The evidence included two incidents wherein Holder told third parties he had not taken compensation, but we agree with the apparent conclusion of the district court that these were insufficient to show an affirmative intent to waive compensation because they were arguably consistent with an intent to claim compensation at

a later time for prior periods. Lyons argued to the district court and now argues on appeal, however, that the trustee's failure to assert his contractual right of compensation for nearly 12 years should be considered waiver by inference. Although we decline to ascertain the weight of such evidence, we conclude that Holder's standing mute on his right to compensation for 12 years under these circumstances was some evidence of waiver. Moreover, although the record on appeal is not entirely clear on this, Holder's failure to address fees upon each accounting submitted to the beneficiary may also be considered a reasonable inference that waiver was intended. We conclude the district court either ignored undisputed evidence of waiver by inference or based its judgment on a misunderstanding of the law. For this reason, judgment against Lyons at the close of her evidence was improper.

Accordingly, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion. Specifically, the district court is directed to conduct a new trial limited to the issues of whether Holder waived his fees for any period of time prior to any final accounting and, as to any periods where the court finds no waiver, the reasonableness of requested fees for such periods.

### Burden of Proof on Remand

Noting that the parties were unclear on the applicable burden of proof, we address this issue in order to assist the district court on remand. The heart of Lyons' challenge to Holder's compensation is her assertion that his claim for compensation was barred in whole or in part by the doctrine of waiver. A claim of waiver is considered an affirmative defense under Kansas law. See K.S.A. 60-208(c). The party raising an affirmative defense such as waiver bears the burden of proving the defense. *Munck v. KPERS*, 35 Kan. App. 2d 311, 321-22, 130 P.3d 117 (2006) (agency bore burden of proving its assertion that claimant waived timely hearing); *Bayless v. Dieckhaus*, 33 Kan. App. 2d 620, 623, 106 P.3d 83, *rev. denied* 280 Kan. 981 (2005) (the party asserting the defense has the burden of pleading and proving the applicability of the statute of limitations).

Here, Lyons asserted waiver in response to Holder's claims that he was entitled to compensation by virtue of the trust. Even though Lyons seeks affirmative relief by reason of waiver, the doctrine has been asserted in a defensive manner and must be proven in the same manner as if asserted as a defense to affirmative relief. See *Munck*, 35 Kan. App. at 322; *Tabor v. Lederer*, 205 Kan. 746, 748, 472 P.2d 209 (1970). Accordingly, Lyons should have the burden of proof on the issue of waiver on remand.

Reversed and remanded with directions.