24 Kan. App.2d 456 (1997)
946 P.2d 100
IN THE INTEREST OF C.D.W., A Minor Child Under the Age of Eighteen.
No. 77,939.
Court of Appeals of Kansas.
Opinion filed October 10, 1997.
Kim Christiansen, of Wichita, for appellant guardian ad litem.
Richard Macias, of Wichita, for appellee natural mother.
Before BRAZIL, C.J., RULON, J., and PADDOCK, S.J.
RULON, J.:
This is a termination of parental rights case where the child, C.D.W., through her guardian ad litem (GAL), appeals the trial court's order terminating the parental rights of her putative father. We affirm.
The facts in this case are not in dispute.
C.D.W. was at the time of this action a 3-year-old child. M.D.W. is the natural mother of C.D.W. B.J.S. is the putative father of C.D.W. The father and the mother lived together for a time but terminated that arrangement sometime prior to the time C.D.W. was born.
In April 1992, the mother filed a child in need of care petition alleging the father had never provided any support or had any visitation with the child for 2 years, and in effect had abandoned C.D.W. The mother's petition requested that C.D.W. remain in *457 the mother's custody and that the father's parental rights be terminated.
At the hearing on the motion to terminate, the putative father, through his attorney, declined to participate in a paternity test, claiming he did not want custody, and essentially said he had no interest in continuing any parental rights. The mother testified her primary concern was that if anything happened to her, she did not want the father to have custody of C.D.W. The father consented to termination of his rights.
The only person who objected to the termination was the GAL, who argued C.D.W. was being well cared for in the home of the maternal grandmother and in the mother's home and, therefore, C.D.W. was not a child in need of care. The GAL argued that C.D.W. had the right to continue the legal parental relationship with her father in case she wanted to establish an actual relationship with him and because she was entitled to support from him.
The mother testified that prior to C.D.W.'s birth, the father had physically abused her on one occasion. The mother further testified the father had an alcohol abuse problem.
Essentially, the district court found:
 C.D.W. had been physically, mentally, or emotionally abused or neglected by the father.
 As to the father, C.D.W. was without parental care, control, or subsistence and such condition was not due solely to the father's lack of financial means.
 C.D.W. was a child in need of care and, by a showing of clear and convincing evidence, the father was unfit and such condition was not likely to change in the foreseeable future.
 The father was unfit because of physical, mental, or emotional neglect of C.D.W., and for failure to maintain contact with and provide support to C.D.W.
The district court, based upon the above findings, terminated the father's parental rights and awarded custody of C.D.W. to the mother.
Before us, the GAL argues that the evidence is clear that C.D.W. was being well cared for by her mother and maternal grandmother and there was no evidence that she was in any way in need of care.
*458 In Kansas, the law is well settled that "[t]he termination of a parent's rights or the finding that a child is a `child in need of care' depends upon the conduct of the parents whose rights are at issue and not upon the conduct of the custodial parent or other persons." In re N.D.G., 20 Kan. App.2d 17, 23-24, 883 P.2d 89, rev. denied 256 Kan. 995 (1994). Consequently, the fact that C.D.W. was being well cared for in the custody of her mother and maternal grandmother is irrelevant.
K.S.A. 1996 Supp. 38-1502(a) reads in relevant part:
"`Child in need of care' means a person less than 18 years of age who:
(1) Is without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian;
(2) is without the care or control necessary for the child's physical, mental or emotional health; [or]
(3) has been physically, mentally or emotionally abused or neglected or sexually abused."
K.S.A. 1996 Supp. 38-1502(b) reads:
"`Physical, mental or emotional abuse or neglect' means the infliction of physical, mental or emotional injury or the causing of a deterioration of a child and may include, but shall not be limited to, failing to maintain reasonable care and treatment, negligent treatment or maltreatment or exploiting a child to the extent that the child's health or emotional well-being is endangered."
By failing to ever visit the child and by failing to support the child, the father's conduct meets the criteria stated in K.S.A. 1996 Supp. 38-1502(a)(1), (2), and (3). We conclude there was substantial competent evidence to support the court's finding that C.D.W. was a child in need of care.
Next, the GAL argued this court should not permit two parents, for their own convenience, to agree to terminate the parental rights of one of them. The substance of the GAL's argument is that the father has a duty to support C.D.W. and C.D.W. has a right to, in the future, have the opportunity to establish a relationship with her father. According to the GAL, allowing parents to simply agree to terminate one parent's rights and, therefore, terminate that parent's duties, defies the attempts of both state and federal governments to force parents to provide support for their children.
*459 Arguably, there is support for the GAL's argument. Through the years the Kansas appellate courts have repeatedly said:
"`[A] child is not in any sense like a horse or any other chattel, subject-matter for absolute and irrevocable gift or contract. The father cannot, by merely giving away his child, release himself from the obligation to support it, nor be deprived of the right to its custody. In this it differs from the gift of any article which is only property. If to-day [a father] should give a horse to another party, that gift is for all time irrevocable, and the property can never be reclaimed; but he cannot by simply giving away his child relieve himself from the obligation to support that child, nor deprive himself of the right to its custody.'" In re Jackson, 164 Kan. 391, 396, 190 P.2d 426 (1948) (quoting Chapsky v. Wood, 26 Kan. 650, 652 [1881]).
There are two statutory methods for terminating a parent's rights: (1) adoption and relinquishment, K.S.A. 59-2111 et seq., and (2) termination of parental rights, K.S.A. 38-1581 et seq. See State ex rel. Secretary of SRS v. Clear, 248 Kan. 109, 116, 804 P.2d 961 (1991). In In re J.A.C., 22 Kan. App.2d 96, 100-102, 911 P.2d 825 (1996), this court recognized that the natural mother could not use the Kansas Adoption and Relinquishment Act (Act) to terminate a putative father's parental rights unless the child was being adopted or the parent was relinquishing the child to SRS or any other agency which accepts the relinquishment in writing. According to the mother in In re J.A.C., it was unreasonable for a court to hold that a single parent could not terminate the rights of an absent, nonsupporting parent to become the sole custodian of a child, but that a complete stranger or SRS could become the sole custodian. While this court recognized the logic in such argument, we held that a parent could not proceed with what was an essentially declaratory judgment action to foreclose a putative parent from coming forward at some later date to claim parentage.
However, K.S.A. 38-1581 allows any interested party to file a petition requesting termination of parental rights. K.S.A. 1996 Supp. 38-1502(e) and K.S.A. 38-1541 establish that a parent is an interested party under the Act. In In re N.D.G., 20 Kan. App.2d at 23, this court held that one parent can proceed against the other under the child in need of care statutes. This court has previously confirmed that a request for termination of parental rights may be *460 included in the initial child in need of care petition. In re J.G., 12 Kan. App.2d 44, Syl. ¶ 1, 734 P.2d 1195, rev. denied 241 Kan. 838 (1987). Under K.S.A. 1996 Supp. 38-1583(b)(4), emotional neglect is a valid consideration in termination decisions along with K.S.A. 1996 Supp. 38-1583(c)(2) (failure to maintain reasonable contact) and (c)(4) (failure to pay reasonable maintenance). The physical, mental, and emotional conditions and needs of the child are the primary considerations in cases of this nature. K.S.A. 1996 Supp. 38-1583(e); In re N.D.G., 20 Kan. App.2d at 21.
Under the Kansas Code for Care of Children, K.S.A. 38-1501 et seq., both parents may agree that one parent's rights should be terminated if the noncustodial parent has no contact with and fails to support the child. The custodial parent will then have grounds to file a child in need of care petition and seek to terminate the noncustodial parent's rights. Even though the child is being well cared for by the custodial parent, a court may find that the noncustodial parent has abandoned the child and thus find that the child is a child in need of care and proceed to terminate the noncustodial parent's rights. In this way the custodial parent can be assured that the other parent can never try to challenge his or her custody and will never have custody of the child even if the custodial parent dies. Conversely, the noncustodial parent is assured that he or she will never have to provide support for the child, either directly or through reimbursement to SRS under K.S.A. 1996 Supp. 39-709 and K.S.A. 1996 Supp. 39-755. While this result appears directly contrary to the established rule of law that a parent may not simply divest himself or herself of the duty to support his or her child, Kansas statutes are clear that such action is permitted as long as both parents are willing and the court finds it is in the best interests of the child.
"When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute." State v. Alires, 21 Kan. App.2d 139, Syl. ¶ 2, 895 P.2d 1267 (1995).
Affirmed.