IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 28, 2010 Session

JOHN H. MEEKS, TRUSTEE OF MARITAL TRUST AND CREDIT
SHELTER TRUST U/W/O MICHAEL HOLLIDAY v. SUCCESSOR
TRUSTEES OF MARITAL TRUST AND CREDIT SHELTER TRUST
U/W/O MICHAEL HOLLIDAY

Direct Appeal from the Chancery Court for Shelby County
No. CH-08-0964-2      Arnold Goldin, Chancellor

No. W2009-02016-COA-R3-CV - Filed September 1, 2010

The plaintiff served as the trustee of two trusts for several years. After he was informed that his services were no longer needed, the plaintiff claimed that he was entitled to compensation in the form of trustee's fees for his service. The trial court ruled, on a motion for summary judgment, that the plaintiff had waived his right to trustee's fees and that he was equitably estopped from claiming such fees. The plaintiff appeals. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Lawrence M. Magdovitz, Cordova, Tennessee, for the appellant, John  H. Meeks, Trustee of Marital Trust and Credit Shelter Trust u/w/o Michael Holliday

R. Mark Glover, Kristine L. Roberts, Jacob A. Dickerson, Memphis, Tennessee, for the appellees, Successor Trustees of Marital Trust and Credit Shelter Trust u/w/o Michael Holliday

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Michael Edward Holliday died on August 31, 2001.  Mr. Holliday's will established two trusts: the Michael Edward Holliday Credit Trust, and the Marital Trust.  The beneficiaries of the trusts were Mr. Holliday's wife and the couple's three sons. The will appointed John Meeks ("Plaintiff") to serve as trustee of the two trusts, as he was a close personal friend of the Holliday family.  Plaintiff accepted the appointment as trustee and served in that capacity for several years.  In May of 2007, Mrs. Holliday sent an e-mail message to Plaintiff, thanking him for his service as trustee and informing him that she had decided to become the trustee of the Marital Trust and that her sons would be serving as co-trustees of the Credit Trust.

In September of 2007, Plaintiff sent a letter directly to the trusts' investment manager at Morgan Stanley, in which Plaintiff stated that he was acting as trustee of the trusts, and he requested a check for nearly $250,000 for "trustee's fees" for the years 2002 through 2006. When the Hollidays objected, Plaintiff filed this lawsuit in chancery court.

Plaintiff's complaint set forth three causes of action against the Hollidays: a "claim for compensation for serving as trustee," a claim for unjust enrichment, and a request for a declaratory judgment that Plaintiff was replaced as trustee by the Hollidays and also released from any liability for his actions or inactions as trustee.  Plaintiff sought $249,033 in trustee's fees,[1] plus expenses, attorney's fees, and costs.  Plaintiff claimed that he was entitled to trustee's fees based upon the following provision of Mr. Holliday's will:

> Any person who serves as Executor and/or Trustee under this Will, shall be entitled to reasonable compensation for his or its services as such Executor and/or Trustee.

Plaintiff also claimed that he was entitled to an award of his attorney's fees, whether he was ultimately awarded trustee's fees or not, due to a provision of the will granting numerous powers to the executor and/or trustee, including the power

> To employ such agents, accountants, attorneys and/or financial or investment advisors, who may be my Executor, or a firm or corporation in which my Executor may be interested; open and maintain such so-called "custody" or

---

[1] According to the complaint, Plaintiff calculated the amount of his fees as "1.0% of the Trust assets per annum for the years of 2001 through 2007."

"safekeeping" accounts as they may deem appropriate for the proper management and administration of my estate or the trusts hereby created, or for legal, accounting, financial or investment advisory services in connection therewith; and allow and pay to such agents, accountants, attorneys, advisers and/or custodians requisite compensation, plus all necessary costs and disbursements, without prior judicial approval.

The Hollidays filed an answer denying that Plaintiff was entitled to compensation, attorney's fees, or costs, and raising the affirmative defenses of waiver, estoppel, laches, and/or the statute of limitations, among other things.

The Hollidays subsequently filed a motion for summary judgment as to counts one and two of the complaint (the compensation claim and the unjust enrichment claim), asserting that such claims were barred by waiver, estoppel, laches, and/or the statute of limitations. The Hollidays also argued that there was no basis for an award of Plaintiff's attorney's fees. In support of their motion, the Hollidays submitted Plaintiff's response to their requests for admissions, in which Plaintiff admitted that "after Mike Holliday's death, Donna Holliday and various members of her family lived in [my wife's] and my home for about six weeks. During that time, I remember one short conversation with Donna Holliday in which I brought up the subject of Trustee fees. At that time I stated words to the effect that I would not take a fee for my services as Trustee. I deny that such verbal statement constitutes an enforceable promise or agreement." It was undisputed that Plaintiff was never paid any compensation while serving as trustee. Plaintiff also admitted during discovery that on multiple occasions over the years, he approved the books, records, and tax returns of the trusts, in which there was no mention of trustee compensation. He also conceded that he did not claim a right to compensation or otherwise inform the Hollidays that he would be seeking compensation prior to September 20, 2007, when he sent the letter to Morgan Stanley.

In addition, the Hollidays submitted the affidavit of John Ivy, who had served as the trusts' tax accountant since the trusts were established. Mr. Ivy stated that he had met with Plaintiff when preparing the trusts' first tax returns in February or March of 2003. According to Mr. Ivy, "At our meeting, [Plaintiff] stated in my presence that he would not take a fee as Trustee. He stated that he was serving as Trustee because of his close relationship with Mike Holliday and the Holliday family." Mr. Ivy further explained during his deposition:

[W]hen we got down to business, I said, John, are you going – you know, are you going to draw a fee? It's not necessarily uncustomary for a trustee to collect a fee. And he said, oh, no, Mike and I are – I'm doing this as a favor to the family and Mike and I were best of friends and I just want to do whatever the Holliday family wants me to do.

-3-

Mr. Ivy stated that the trusts' tax returns never reflected any fee paid or due to Plaintiff as trustee, and that Plaintiff never asked for or mentioned the payment of a trustee's fee until the fall of 2007.

The Hollidays also submitted the affidavit of Joe Carney, who was Plaintiff's business partner at the time of Mr. Holliday's death. Mr. Carney stated:

> Approximately two years after Mr. Holliday's death, I had a conversation with [Plaintiff] in which he mentioned that he had been named as trustee of trusts established by Mr. Holliday's will. We discussed the fact that I had another friend who was a trustee, and I said that my friend was not receiving any payment for serving as trustee. [Plaintiff] said that he, too, would never accept any payment for serving as trustee of the Holliday trusts.
> The fact that [Plaintiff] was trustee of the Holliday trusts came up during subsequent conversations. [Plaintiff] said multiple times that he would not accept any payment for serving as trustee of the Holliday trusts. He said that because of his long-standing friendship with Michael Holliday, he was not going to accept any payment.

The Hollidays contended that all of these facts demonstrated that Plaintiff had waived any right to trustee's fees.

Plaintiff filed a response to the motion for summary judgment, in which he contended that his statement to Mrs. Holliday about not taking a fee was being taken out of context from the conversation in which the statement was made, although he did not elaborate on this assertion. Regarding Mr. Ivy's testimony, Plaintiff did not dispute that he told Mr. Ivy at their first meeting that he would not take a trustee's fee.[2] However, he pointed out that Mr. Ivy never inquired again as to whether Plaintiff would take a trustee's fee, and Plaintiff did not state again in subsequent years that he would not accept a fee. Regarding the statement of Mr. Carney, Plaintiff's former business partner, Plaintiff pointed out that during his deposition, Mr. Carney said he could not recall whether Plaintiff actually used the term "trustee" fees when stating that he would never accept fees from the family.

Plaintiff's response to the motion for summary judgment further alleged that he was entitled to compensation because one of Mr. Holliday's sons allegedly told him, in March 2007, that he was entitled to trustee's fees according to the will. During Plaintiff's

---

[2] Plaintiff testified that he did not recall the conversation with Mr. Ivy, but he said that Mr. Ivy is "an excellent guy," and "if he said I said it, I would agree that I probably said it. He's that kind of guy. I wouldn't dispute that."

deposition, he explained that there was "strife between the families at that time" due to a deteriorating business relationship between Plaintiff's son and one of the Hollidays' sons. Plaintiff said that Brad Holliday requested a meeting with Plaintiff and asked whether Plaintiff would continue to serve as trustee, and Plaintiff said that he would. According to Plaintiff, Brad Holliday asked Plaintiff if he knew that he was entitled to fees for serving as trustee. However, Plaintiff said that he "just kind of aired that off" because of the strife between the families and because he "didn't see any sense in making that situation any more difficult than it already was." Nevertheless, Plaintiff claimed that "after careful consideration," he later decided to accept "the Hollidays' offer of payment of Trustee fees."

The trial court entered an order on September 23, 2009, granting the Hollidays' motion for summary judgment as to Plaintiff's claim for compensation and his unjust enrichment claim. The trial court found that Plaintiff waived any right to trustee's fees "as evidenced, among other things, by his statements and course of conduct over a period of six years." The court further found that Plaintiff was equitably estopped from claiming trustee's fees, as the Hollidays "could have replaced Plaintiff as Trustee much earlier had they known he would later seek trustee's fees, thereby avoiding payment of fees." The trial court also found that Plaintiff was not entitled to an award of attorney's fees or costs. Regarding the third count in Plaintiff's complaint, the order stated that the court had not yet ruled on the request for declaratory judgment and that it would remain pending.

Nevertheless, on September 30, 2009, Plaintiff filed a notice of appeal, stating that he was appealing "the final judgment" from September 23. He also filed an appeal bond and a designation of the record on appeal. Upon realizing that the September 23 order was not a final judgment, Plaintiff filed a motion in the trial court requesting permission to seek an interlocutory appeal of the September 23 order, and alternatively requesting that the trial court make the order final pursuant to Tennessee Rule of Civil Procedure 54.02. The Hollidays subsequently filed a motion for summary judgment on the remaining declaratory judgment claim, which the trial court granted on January 12, 2010. Having resolved all the issues, then, the trial court's order stated that Plaintiff's motion for an interlocutory appeal was moot. Plaintiff then proceeded to file an amended designation of the record on appeal in order to pursue his appeal to this Court, but he did not file a second notice of appeal. Instead, he relied upon the notice of appeal he had filed on September 30, 2009.

## II. ISSUES PRESENTED

Plaintiff presents the following issues, slightly restated, for review on appeal:

1.  Whether the trial court erred in holding that Plaintiff had waived or otherwise was equitably estopped from claiming trustee's fees, such that summary judgment was

improper;

2.      Whether the trial court erred in holding that Plaintiff was not entitled to his attorney's fees under the will.

Additionally, the Hollidays present the following issues for review:

3.      Whether Plaintiff failed to file an effective notice of appeal.
4.      Whether summary judgment was proper based on the alternative grounds of laches and/or the statute of limitations.

For the following reasons, we affirm the decision of the chancery court.[3]

## III.   STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Id.* Not every factual dispute requires the denial of a motion for summary judgment. *Id.* at 514. To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." *Id.* (citing *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)).

When the party moving for summary judgment is a defendant asserting an affirmative defense, he or she may shift the burden of production by alleging undisputed facts that show the existence of the affirmative defense. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 n.6 (Tenn. 2008). "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.*,

_____

[3] We note that Plaintiff does not raise an issue on appeal regarding the unjust enrichment claim or the declaratory judgment claim.

960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. **Martin**, 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion–that the moving party is entitled to a judgment as a matter of law." **Green**, 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002)).

## IV.  DISCUSSION

### A.  *Notice of Appeal*

First, we must address the Hollidays' contention that this Court lacks jurisdiction to consider Plaintiff's appeal. The Hollidays argue that Plaintiff's notice of appeal was ineffective because it was filed prior to the entry of the final order resolving the declaratory judgment claim.

Tennessee Rule of Appellate Procedure 4(d) provides, "A prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." Rule 4(d) "establishes the general rule that the right to appeal is not lost by filing a notice of appeal before entry of the judgment appealed from." **Advisory Comm'n Comment, Tenn. R. App. P. 4(d).** Nonetheless, the Hollidays contend that Rule 4(d) is inapplicable to the situation before us, citing the Middle Section's decision in **Bradford v. Bradford**, No. 01-A-01-9603-CH00121, 1996 WL 303655 (Tenn. Ct. App. Jun. 7, 1996). In that case, the appellant had previously filed a premature notice of appeal when

the trial court had not yet addressed the issue of back child support. *Id.* at *1. The Middle Section had dismissed the appeal in 1995 for lack of a final order. *Id.* In 1996, the trial court entered an agreed order addressing child support, but the appellant did not file a second notice of appeal. *Id.* Instead, he filed a motion requesting an order allowing his case to go back before the Court of Appeals based on his original "premature" notice of appeal. *Id.* at *2. The Middle Section rejected the appellant's request, with the following explanation:

> As explained in the Committee Comment, [Rule 4(d)] was for the limited purpose of preserving the validity of a notice of appeal filed after entry of final judgment but before the disposition of post-judgment motions such as motions to alter or amend. It was not intended to validate notices of appeal filed, for example, with the complaint. Nor was it intended to preserve the effectiveness of a notice of appeal from a non-final judgment when that appeal is dismissed by the appellate court for lack of a final judgment.

> When the previous appeal was dismissed, the appellant had the opportunity of petition to rehear and/or application for permission to appeal to the Supreme Court. Upon the expiration of the time for same or the exhaustion of such remedies, the judgment of this Court was final, and not subject to revision by this Court.

> The agreed order of February 1, 1996, if it completed the disposition of all issues before the Trial Court, constituted a final judgment from which a new appeal on all issues was available by timely notice of appeal which, apparently, was not filed.

*Id.* at *3. The Court stated that the first notice of appeal had "served its purpose by causing a record to be transmitted to this Court. Having served its purpose, it became . . . useless for any further purpose." *Id.*

Based on the Court's statement in *Bradford* about the "limited purpose" of Rule 4(d), the Hollidays apparently argue that Rule 4(d) only preserves the validity of a premature notice of appeal if it was filed after the entry of a final judgment but before the disposition of a post-judgment motion.

The history of Rule 4(d) was discussed in *Spann v. Abraham*, 36 S.W.3d 452, 461 (Tenn. Ct. App. 1999):

> Several years after the adoption of the Tennessee Rules of Appellate Procedure, we were called upon to pass upon the effectiveness of a notice of

appeal filed before the trial court had disposed of a pending post-trial motion filed before the notice of appeal. A Western Section panel, construing Tenn. R. App. P. 4(a) as it read at the time, held that the notice of appeal was "premature" and that parties who did not file another notice of appeal after all pending post-trial motions were resolved were not entitled to an appeal as of right. *See Steele v. Wolfe Sales Co.*, 663 S.W.2d 799, 803 (Tenn. Ct. App. 1983). This decision caused the Tennessee Supreme Court to amend Tenn. R. App. P. 4 in 1984 to state that a prematurely filed notice of appeal would be treated as filed after the entry of a final order disposing of all the claims between all the parties. See Tenn. R. App. P. 4(d). Notices of appeal, in circumstances like those in the *Steele* case, were "premature," . . . because they were filed before the trial court had resolved all the claims between all the parties.

Thus, we recognize that the Supreme Court was likely prompted to amend Rule 4 and address premature notices of appeal due to the frequently encountered situation in which a party files a notice of appeal prior to the resolution of post-trial motions. Subsection (e) of Rule 4 even specifies that "A notice of appeal filed prior to the trial court's ruling on a timely specified [post-trial] motion shall be deemed to be premature and shall be treated as filed after the entry of the order disposing of the motion and on the day thereof."

However, subsection (d), by its terms, does not limit its applicability to notices of appeal filed while post-trial motions are pending. Rather, it broadly proclaims that "[a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." A "premature" notice of appeal, by simple definition, is "one filed before the entry of a final judgment." *Savage v. Hildenbrandt*, No. M1999-00630-COA-R3-CV, 2001 WL 1013056, at *9 (Tenn. Ct. App. Sept. 6, 2001). A notice of appeal is premature when it is filed before all the rights and liabilities of all the parties are adjudicated. *Tudors v. Bell*, No. 01-A-01-9802-CV00103, 1999 WL 187331, at *2 (Tenn. Ct. App. Apr. 7, 1999). The Advisory Commission Comment to Rule 4(d) states, without limitation, that Rule 4(d) "establishes the general rule that the right to appeal is not lost by filing a notice of appeal before entry of the judgment appealed from."

Furthermore, Rule 4(d) has not been interpreted as narrowly as Plaintiff suggests, with the exception of the *Bradford* opinion.[4] On numerous occasions, all three sections of this Court have interpreted Rule 4(d) as preserving the validity of a notice of appeal that was prematurely filed due to the entry of a non-final order that failed to resolve all the claims or

---

[4] We note that *Bradford* has not been cited in any subsequent cases.

issues in a case, without regard to post-trial motions. In *In re Conservatorship of Ackerman*, 280 S.W.3d 206, 209-10 (Tenn. Ct. App. 2008), for example, the appellant "prematurely filed" a notice of appeal after the trial court named *temporary* co-conservators, when it had not yet entered a final order resolving the conservatorship issue. Pursuant to Rule 4(d), the Eastern Section "treated" her notice of appeal as being filed on the date when the final order in the case was entered and concluded that it had jurisdiction to consider the appeal. *Id.*; *see also Thompson v. Logan*, No. M2005-02379-COA-R3-CV, 2007 WL 2405130, at *9 (Tenn. Ct. App. Aug. 23, 2007) (involving a notice of appeal filed before resolution of a pretrial motion for sanctions, where the Court described the notice of appeal as "premature, [but] nevertheless effective" pursuant to Rule 4(d)); *Christ v. Homonai*, No. W2006-00352-COA-R3-JV, 2006 WL 2633166, at *1-2 (Tenn. Ct. App. Sept. 14, 2006) (involving a notice of appeal filed after parentage was established but prior to the determination of custody); *Grigsby v. Univ. of Tenn. Med. Ctr.*, No. E2005-01099-COA-R3-CV, 2006 WL 408053, at *2 (Tenn. Ct. App. Feb. 22, 2006) (involving a notice of appeal filed after the dismissal of one defendant, but while claims against other defendants remained pending, which was nevertheless effective to appeal the non-final order dismissing the first defendant); *Howse v. Campbell*, No. M1999-01580-COA-R3-CV, 2001 WL 459106, at *1-3 (Tenn. Ct. App. May 2, 2001) (same); Lawrence A. Pivnick, 2 Tenn. Cir. Ct. Prac. § 30:3 (2010 ed.) ("the filing of a notice of appeal before the entry of final judgment, where there have been no post-trial motions, will be treated as if it had been filed after the final judgment was entered").

The Court of Criminal Appeals applied Rule 4(d) in a similar manner in *Johnson v. State*, No. E2001-00019-CCA-R3-PC, 2002 WL 1482770, at *2 (Tenn. Crim. App. July 11, 2002), where the petitioner filed his notice of appeal just after his hearing but nine days before the entry of the judgment. The Court held that his premature notice of appeal "was filed too early" but that it "must be treated as timely filed" pursuant to Rule 4(d). *Id.*

In sum, we acknowledge that the Supreme Court was likely motivated to enact Rule 4(d), at least in part, to address notices of appeal that were filed after a judgment was entered but prior to the resolution of post-trial motions. Nevertheless, the broad language utilized by the Supreme Court in subsection (d) has not been interpreted as being limited to such situations. We will apply Rule 4(d) in a manner consistent with the Courts' applications in *Conservatorship of Ackerman*, *Thompson*, *Christ*, and others. Thus, we find that Plaintiff's notice of appeal, filed prior to the final order addressing the declaratory judgment claim, was prematurely filed, but pursuant to Rule 4(d), it shall be treated as timely filed.

The Hollidays also present an alternative argument on appeal as to why Plaintiff's notice of appeal should be deemed ineffective. They claim that even if the notice of appeal was not deficient due to its timing, Plaintiff "effectively withdrew" the notice of appeal after

it was filed. They rely upon an email from Plaintiff's counsel to the Hollidays' counsel, in which he stated:

> I just realized that this is an interlocutory appeal. I must have been having a senior moment. I should have listened to you. I'll get the motion filed shortly. You can ignore the notice of appeal if it went out to you.

They further contend that they had no notice that Plaintiff intended to appeal due to the confusion. In response, Plaintiff argues that it was clear to the Hollidays throughout the proceedings that he intended to pursue an appeal, whether by means of an appeal as of right or seeking an interlocutory appeal.

The Hollidays do not cite any authority for their assertion that a notice of appeal can be "withdrawn" in such a manner, and we are not aware of any. As such, we decline to hold that a notice of appeal can be withdrawn based upon what one attorney allegedly told another. Rule 15 of the Tennessee Rules of Appellate Procedure addresses voluntary dismissals of appeals and provides, "An appeal may be dismissed by filing in the appellate court a stipulation for dismissal signed by all parties or on motion and notice by appellant." Rule 4(e) specifies that an appellant who files a premature notice of appeal and decides to terminate the appeal as a result of the trial court's disposition of post-trial motions "shall file in the appellate court a motion to dismiss the appeal pursuant to Rule 15." Because these procedures were not followed in the instant case, Plaintiff's notice of appeal was not withdrawn. We also find no merit in the Hollidays' assertion that they had no notice that Plaintiff intended to appeal the trial court's ruling.

### B. Waiver & Estoppel

Now, we turn to the merits of this appeal. According to the Tennessee Uniform Trust Code, "If the terms of a trust specify the trustee's compensation, the trustee is entitled to be compensated as specified[.]" **Tenn. Code Ann. § 35-15-708(b).** If the terms of the trust do not specify the trustee's compensation, the trustee is entitled to compensation that is reasonable under the circumstances, unless the settlor, if living, or otherwise a majority of the qualified beneficiaries, have otherwise agreed. **Tenn. Code Ann. § 35-15-708(a).** Again, Mr. Holliday's will provided that any person who served as trustee under the will was entitled to "reasonable compensation for his or its services" as trustee.

However, the Comments to the Official Text of section 708 of the Tennessee Uniform Trust Code make clear that "A trustee may also agree to waive compensation[.]" **Comment to Tenn. Code Ann. § 35-15-708.** A trustee may voluntarily forgo any claim to compensation, and waiver may be inferred from conduct in some circumstances.

*Restatement (Third) of Trusts* § 38 cmt. g (2003).[5] "Many courts have recognized that a trustee can waive compensation under a variety of circumstances." ***Lyons ex rel. Lawing v. Holder***, 163 P.3d 343, 348 (Kan. Ct. App. 2007) **(**citing *McCormick v. McCormick,* 536 N.E.2d 419 (Ill. Ct. App. 1988)). "A trustee's waiver of commissions is a fact to be shown by the evidence, either by express declaration, or by acts and declarations manifesting an intent and purpose not to charge commissions, or by a course of conduct from which such intent and purpose may be implied." 90A C.J.S. *Trusts* § 618 (2010). In sum, "where the trustee either by words or deeds creates a basis for reasonable belief that compensation will not be sought, the beneficiaries are entitled to rely on such belief." 76 Am. Jur. 2d *Trusts* § 589 (2010).

The party claiming a waiver has the burden of proving it by a preponderance of the evidence. ***Jenkins Subway, Inc. v. Jones***, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998). Generally, "[a] waiver is a voluntary relinquishment by a party of a known right." ***Chattem, Inc. v. Provident Life & Acc. Ins. Co.***, 676 S.W.2d 953, 955 (Tenn. 1984) (citing *Baird v. Fidelity-Phenix Fire Ins. Co.*, 162 S.W.2d 384 (Tenn. 1942)). The doctrine of waiver "concedes a right, but assumes a voluntary relinquishment of it." ***Collins v. Summers Hardware & Supply Co.***, 88 S.W.3d 192, 201 (Tenn. Ct. App. 2002). An express waiver may be proven by an explicit declaration, by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct. *Chattem*, 676 S.W.2d at 955; ***Team Design v. Gottlieb***, 104 S.W.3d 512, 528 (Tenn. Ct. App. 2002). An express waiver is distinguishable from an implied waiver, also known as equitable estoppel or waiver by estoppel, which includes the following elements: "(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Chattem*, 676 S.W.2d at 955 (quoting *Provident Washington Ins. Co. v. Reese*, 373 S.W.2d 613, 615 (Tenn. 1964)).

Here, we find that the undisputed facts demonstrate that Plaintiff waived his right to trustee's fees. Plaintiff's course of conduct and his own admissions clearly establish that he knowingly and voluntarily waived his right to compensation as trustee. Plaintiff admitted that after Mr. Holliday died, he had a conversation with Mrs. Holliday "in which [he] brought up the subject of Trustee fees. At that time [he] stated words to the effect that [he] would not take a fee for [his] services as Trustee." "Explicit indications to the beneficiary that the trustee would not or is not charging for services is sufficient to establish a waiver of

---

[5] The Comment to the Official Text of section 708 of the Tennessee Uniform Trust Code cites *Restatement (Third) of Trusts* § 38 cmt. g (Tentative Draft No. 2, approved 1999). The *Restatement (Third) of Trusts* was formally adopted and promulgated by the American Law Institute on May 16, 2001. The 2003 version of comment (g) is identical to that in Tentative Draft Number 2, cited by the Comment.

compensation." ***Lyons ex rel. Lawing v. Holder***, 163 P.3d 343, 348 (Kan. Ct. App. 2007). In addition, Plaintiff did not deny that when the tax accountant asked him, at the beginning of their dealings, "are you going to draw a fee?," Plaintiff said that he would not and that he was "doing this as a favor to the family." Plaintiff conceded that he did not claim a right to compensation or otherwise inform the Hollidays that he would be seeking compensation prior to September 20, 2007, some four months after Mrs. Holliday informed him that she and her sons were replacing him as trustee. When asked at his deposition if he sought trustee's fees in September of 2007 because of the strained relationship between the families, Plaintiff replied, "I guess that would have to have played some part in it."

Plaintiff makes much of the fact that Brad Holliday allegedly told him, in March 2007, that he was entitled to claim trustee's fees under the will. However, Plaintiff himself testified that his response to Brad was that he "just kind of aired that off" because "[t]here was a lot of strife between the families at that time, and I didn't see any sense in making that situation any more difficult than it already was." Thus, in our view, Plaintiff's response could only be viewed as yet another assurance to the Hollidays that he did not intend to seek compensation.

On appeal, Plaintiff appears to argue that the Hollidays cannot prevail on their waiver defense because they did not prove that they relied on his statements that he would not seek compensation. However, proof of reliance, while necessary under a theory of equitable estoppel, is unnecessary where there has been an express waiver. ***Chattem***, 676 S.W.2d at 956. "Oral or written statements relinquishing known rights or privileges constitute an express waiver." ***BMG Music v. Chumley***, No. M2007-01075-COA-R9-CV, 2008 WL 2165985, at *5 (Tenn. Ct. App. May 16, 2008) (citing *Grimsley v. Kittrell*, No. M2005-02452-COA-R3-CV, 2006 WL 2846298, at *3 (Tenn. Ct. App. Sept. 29, 2006)).

In summary, we conclude that the trial court properly granted summary judgment to the Hollidays because Plaintiff waived his right to trustee's fees.

### C.    *Attorney's Fees*

Finally, we address Plaintiff's contention that the trial court erred in concluding that he was not entitled to an award of attorney's fees. Plaintiff claims that "[t]he unequivocal language of the Will provides all the authority that the Plaintiff needs to claim his attorney's fees and costs, even if the Court denies the Plaintiff's requests for trustee fees." He relies upon the provision of the will that empowers the trustee

> To employ such agents, accountants, attorneys and/or financial or investment
> advisors, who may be my Executor, or a firm or corporation in which my

Executor may be interested; open and maintain such so-called "custody" or "safekeeping" accounts as they may deem appropriate for the proper management and administration of my estate or the trusts hereby created, or for legal, accounting, financial or investment advisory services in connection therewith; and allow and pay to such agents, accountants, attorneys, advisers and/or custodians requisite compensation, plus all necessary costs and disbursements, without prior judicial approval.

However, Plaintiff's brief only includes the first and last parts of this provision, so that it reads that the trustee is empowered "To employ such agents, accountants, attorneys and/or financial or investment advisors, . . . ; and allow and pay to such agents, accountants, attorneys, advisers and/or custodians requisite compensation, plus all necessary costs and disbursements, without judicial approval." Thus, Plaintiff claims that the will authorizes anyone serving as trustee to hire attorneys, and he claims that "[i]t does not say for what." We disagree. Although the provision appears to include a misplaced semicolon, we read it as authorizing the trustee "*To employ* such agents, accountants, *attorneys* and/or financial or investment advisors, who may be my Executor, or a firm or corporation in which my Executor may be interested; [and to] open and maintain such so-called 'custody' or 'safekeeping' accounts *as they may deem appropriate for the proper management and administration of my estate or the trusts hereby created, or for legal, accounting, financial or investment advisory services in connection therewith . . . .*" Therefore, Plaintiff, who was removed as trustee long before suit was filed and no longer charged with managing and administering the trusts, is not entitled to recover the attorney's fees he incurred in bringing this lawsuit.


## V.   CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, John Meeks, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.