NOT DESIGNATED FOR PUBLICATION

No. 114,949

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of

K.H.

MEMORANDUM OPINION

Appeal from Rice District Court; STEVE JOHNSON, judge. Opinion filed August 12, 2016. Affirmed.

*Donald E. Anderson II*, of Robert A. Anderson Law Office, of Ellinwood, for appellant natural father.

*Scott E. McPherson*, county attorney, for appellee.

*Gary L. Price, Jr.*, of Boyer & Price Law Office, P.A., of McPherson, guardian ad litem for K.H.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

*Per Curiam*: D.S. appeals the termination of his parental rights over K.H. On appeal, D.S. does not challenge the trial court's finding of unfitness, agreeing that he was likely unfit as a parent when the termination hearing occurred. Nevertheless, D.S. argues that the trial court erred by finding that there was clear and convincing evidence to support that his unfitness was unlikely to change in the foreseeable future. The record on appeal, however, establishes that there was clear and convincing evidence to support the trial court's finding. Accordingly, we affirm the termination of D.S.'s parental rights over K.H.

1

K.H. was born August 26, 2013. On April 21, 2014, police removed K.H from his mother's home. The police reported that K.H. was living in filthy conditions and that K.H. had blisters all over his back. The next day, the trial court held a temporary custody hearing. The trial court awarded the State temporary custody of K.H. because he was likely to sustain immediate harm if allowed to remain in his mother's care. When this hearing occurred, K.H.'s natural father was unknown. Although K.H.'s father was unknown, Saint Francis Community Services (SFCS), an organization the State contracts with to provide family preservation services, made a permanency plan that included the goal of reintegrating K.H. with his natural father.

On May 13, 2014, K.H. was adjudicated to be a child in need of care (CINC). That same day the trial court ordered that SFCS contact K.H.'s putative fathers for paternity testing. D.S. was one of K.H.'s putative fathers. On August 1, 2014, SFCS reported to the trial court that it had scheduled paternity testing with D.S. twice, but D.S. had failed to attend either appointment.

On November 5, 2014, the trial court issued an order requiring D.S. to submit to paternity testing. Meanwhile, D.S., who was on probation for misdemeanor theft and misdemeanor driving under the influence (DUI) in Rice County, violated his probation. At his November 17, 2014, probation revocation hearing, D.S. was ordered to serve his underlying 12-month jail sentence for these convictions in the Rice County Jail. In March 2015, while serving his jail sentence, D.S. submitted to paternity testing as required by the court order. The testing revealed that D.S. was the natural father of K.H. SFCS officially established that D.S. was K.H.'s natural father on April 2, 2015.

After establishing paternity, Kelly Lane, the SFCS caseworker assigned to K.H.'s case, began contacting D.S. On June 17, 2015, D.S. received parole for his DUI and theft convictions. That very day, D.S. violated the terms of his parole by driving while having a suspended license and by driving without a brake light. D.S. was brought back to jail.

2

D.S., however, immediately bonded out of jail. Moreover, although the circumstances surrounding the convictions are unclear, as of June 17, 2015, D.S. was also evidently on probation for his 2014 Barton County convictions for fleeing and eluding a police officer and for a second DUI.

D.S. contacted Lane after he bonded out of jail on June 17, 2015. D.S. did not make any further contact with SFCS until Lane contacted him on July 22, 2015. As part of his reintegration plan, D.S. was to complete a drug and alcohol evaluation and a mental health intake evaluation. Lane contacted D.S., scheduled a drug and alcohol evaluation with D.S. twice, but D.S. failed to show up to those appointments. D.S. eventually completed the drug and alcohol evaluation on August 5, 2015. The evaluation results indicated that D.S. needed one-on-one counseling; accordingly, Lane scheduled D.S.'s first counseling session for the next day, August 6, 2015. D.S. did not show up for the counseling session. D.S. did not respond to Lane's phone calls and phone messages about why he had not shown up for the counseling session. Moreover, D.S. never completed the mental health intake evaluation.

On August 6, 2015, SFCS recommended that reintegration of K.H. with D.S. was no longer possible. The State moved to terminate D.S.'s parental rights under K.S.A. 2015 Supp. 38-2269(b)(4) because D.S. had physically, mentally, or emotionally neglected his child. The State further alleged that D.S. had failed to stay in contact with K.H. or K.H.'s custodian as required under K.S.A. 2015 Supp. 38-2269(c)(2) and had failed to comply with a reasonable case plan as required under K.S.A. 2015 Supp. 38-2269(c)(3).

On August 10, 2015, D.S. attended K.H.'s permanency plan review conference. On August 26, 2015, after violating his parole, D.S. was sent back to jail to serve the remainder of his underlying 12-month jail sentence for the Rice County theft and DUI convictions. D.S.'s parole was revoked because he had picked up the new driving while

3

suspended charge, had failed to appear at a bond hearing, and had failed to report to his parole officer.

On October 26, 2015, the trial court held a hearing on the State's motion to terminate D.S.'s parental rights over K.H. K.H.'s mother voluntarily relinquished her rights over K.H., but D.S. contested the State's motion. At the hearing, D.S. testified: (1) that he had known that K.H. was his child since K.H.'s birth; (2) that he had taken no steps to establish that he was K.H.'s father legally despite this knowledge; (3) that he had only seen K.H. when K.H.'s mother brought him over to his parent's house; (4) that he had never asked K.H.'s mother to see K.H.; (5) that he had never physically or financially cared for K.H.; (6) that he had done nothing related to caring for K.H. since K.H.'s birth; (7) that he had not seen K.H. since before his probation was revoked in November 2014; (8) that he had no knowledge that his driver's license was suspended when he drove his car following his release from jail on June 17, 2015; (9) that he had been employed for only 2 weeks during his 2 months on parole; (10) that he had planned on living with his parents after his release from jail until he had enough money to move out; and (11) that he had 2 more months to serve in jail for his Rice County DUI and theft convictions.

Lane testified about her experiences with D.S. as K.H.'s assigned caseworker. Lane testified that D.S. would often not show up for scheduled appointments. Lane explained that despite two prior scheduled appointments, SFCS was only able to obtain a DNA sample from D.S. for paternity testing after the issuance of the court order and after D.S. went to jail. Lane explained that D.S. took the drug and alcohol evaluation only after missing his first two appointments, that D.S. did not show up for the scheduled counseling session the next day, and that D.S. never scheduled a mental health intake exam despite being provided with information on how to do so. Lane also testified that given that D.S. had never had a "meaningful relationship" with K.H., it would be in K.H.'s best interests to be placed for adoption.

4

D.S.'s parole officer additionally testified about D.S.'s ongoing criminal cases. The trial court took judicial notice of D.S.'s initial Rice County misdemeanor theft and DUI convictions. Moreover, two journal entries were admitted into evidence. The first journal entry was from D.S.'s second DUI and fleeing and eluding a police officer convictions from Barton County. The second journal entry was from D.S.'s driving while suspended conviction and driving with a defective brake light, a traffic violation.

The trial court ultimately terminated D.S.'s parental rights over K.H. The trial court found that there was clear and convincing evidence that D.S. was unfit given: (1) that D.S. physically, mentally, and emotionally neglected K.H. as stated under K.S.A. 2015 Supp. 38-2269(b)(4); (2) that SFCS had made reasonable efforts to reintegrate K.H. with D.S. as stated under K.S.A. 2015 Supp. 38-2269(b)(7); and (3) that D.S. failed to assure K.H. was taken care of, failed to keep in contact with K.H., failed to carry out SFCS's reasonable case plan, and failed to provide any financial support to K.H. as stated under K.S.A. 2015 Supp. 38-2269(c)(1)-(4). The trial court also found that D.S.'s total lack of involvement in K.H.'s life and D.S.'s continuing legal troubles indicated that D.S. was not going to change his conduct or conditions in the foreseeable future. In finding that D.S. was unlikely to change in the foreseeable future, the trial court noted that "the only indication that [D.S.] might change in the future is [D.S.'s] claim that he will, which the Court [cannot] give much weight to based on [D.S.'s] previous conduct." Based on these findings, the trial court ruled that termination of D.S.'s parental rights was in K.H.'s best interests.

*Did the Trial Court Err by Terminating D.S.'s Parental Rights?*

On appeal, D.S. argues that the trial court erred when it terminated his parental rights over K.H. D.S. does not contest the trial court's finding that he was unfit to parent. Instead, D.S. merely argues that the trial court erred when it found that he was unlikely to change his conduct and conditions rendering him unfit to parent in the foreseeable future.

5

D.S. argues that because he was in jail most of the time after K.H.'s paternity was established, he was not given sufficient opportunities to prove that he could become fit in the foreseeable future. D.S. also argues that his case is similar to *In re H.J.P.*, No. 106,727, 2012 WL 1524473 (Kan. App. 2012) (unpublished opinion), a case where this court reversed the trial court's termination ruling. Finally, D.S. asserts that since K.H. has not yet been adopted, it would not negatively affect K.H.'s interests by allowing him to work towards reintegration. The State responds that clear and convincing evidence supported the trial court's unfitness and termination findings. K.H.'s guardian ad litem has filed a statement of concurrence, agreeing with the State that the trial court correctly terminated D.S.'s parental rights.

A review of the law and record of this case establishes that the trial court did not err by terminating D.S.'s parental rights over K.H. As a result, we affirm the trial court.

*Standard of Review*

""[W]hen an appellate court reviews a trial court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

An appellate court must not reweigh evidence or the credibility of witnesses while reviewing the trial court's determination. *In re B.D.-Y.*, 286 Kan. at 705.

*Applicable Law*

K.S.A. 2015 Supp. 38-2269(a) states:

"When the child has been adjudicated to be a child in need of care, the court may terminate parental rights or appoint a permanent custodian when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future."

In making this unfitness determination, the trial court must consider the factors listed in subsection (b) and (c) of K.S.A. 2015 Supp. 38-2269. These factors include: (1) whether parents have neglected the child; (2) whether the family services agency has made reasonable efforts to rehabilitate the family; (3) whether parents have failed to adjust their circumstances to meet the needs of the child; (4) whether parents have failed to care for child when capable of doing so; (5) whether parents have failed to maintain contact with child; (6) whether parents have failed to carry out a reasonable case plan directed toward reintegration; and (7) whether parents have failed to pay for the child's care despite an ability to do so. K.S.A. 2015 Supp. 38-2269(b)(4), (7)-(8), (c)(1)-(4). The existence of any one of these factors, may but does not necessarily, establish grounds for termination. K.S.A. 2015 Supp. 38-2269(f).

Finally, after finding that a parent is unfit and this unfitness is unlikely to change in the foreseeable future, the trial court must consider whether termination is in the best interests of the child. K.S.A. 2015 Supp. 38-2269(g)(1). "In making [this] determination, the court shall give primary consideration to the physical, mental and emotional health of the child. If the physical, mental or emotional needs of the child would best be served by termination of parental rights, the court shall so order." K.S.A. 2015 Supp. 38-2269(g)(1).

*Analysis*

Again, on appeal, D.S. just argues that the trial court erred by finding that he was unlikely to change his conduct and conditions making him an unfit parent in the

foreseeable future. Yet, clear and convicting evidence supported the trial court's finding that D.S. was unlikely to change in the foreseeable future. To summarize, the following evidence was presented at the termination hearing: (1) that D.S. had known that K.H. was his child since K.H.'s birth; (2) that despite this knowledge, D.S. had never attempted to obtain legal rights over K.H. and avoided paternity testing; (3) that D.S. had never had a meaningful relationship with K.H.; (4) that D.S. had never helped to physically or financially care for K.H.; (5) that D.S. had never taken the initiative to visit K.H.; (6) that D.S. had not seen K.H. in over a year when the termination hearing occurred; (7) that D.S. had committed two DUIs, theft, fleeing and eluding a police officer, and driving while suspended after K.H.'s birth; (8) that D.S. had been placed on probation for his first DUI and theft convictions but had his probation revoked; (9) that D.S. had been released from jail after serving only 7 months of his 12-month sentence; (10) that D.S. had immediately committed a new offense after his early release; (11) that D.S. had failed to meet with his parole officer and appear at a bond hearing upon his release; and (12) that D.S. had been sent back to jail to serve his remaining underlying sentence as a result of these violations. Furthermore, Lane's testimony established that when D.S. was not in jail, he had failed to comply with any of SFCS's reintegration goals except the goal of completing a drug and alcohol evaluation.

Clearly, in the light most favorable to the State, the preceding evidence supports that D.S. was unlikely to change in the foreseeable future. The evidence indicates that even though D.S. knew K.H. was his child, he actively avoided paternity testing, he did not take any initiative to be involved in K.H.'s life, and he also made choices that resulted in criminal convictions. Moreover, even when D.S. was not in jail during the summer of 2015, D.S. knew that his parenting privileges were in danger. Nevertheless, D.S. failed to comply with SFCS's reintegration goals and the terms of his parole and probation. Overall, D.S.'s actions showed that even when given multiple opportunities: (1) D.S. did not take steps to get involved in K.H.'s life; and (2) D.S. consistently made choices resulting in criminal violations, which prevented him from being involved in K.H.'s life.

As a result, there is clear and convincing evidence that D.S. is unlikely to change his conduct and the conditions, which renders him an unfit parent in the foreseeable future.

In his brief, D.S. emphasizes that he might be able to change if given the opportunity. D.S. believes that he was not afforded a long enough opportunity to show that he could change since he was out of jail only 2 months following his receipt of K.H.'s paternity results. Nevertheless, since according to D.S.'s own testimony he always knew K.H. was his child, he had the opportunity to establish that he was a fit parent for K.H.'s entire life, not just for the 2 months when he was not in jail. Thus, D.S.'s distinction between the time before paternity was established and the time after paternity was established is unpersuasive. Additionally, as explained in the preceding paragraphs, D.S. was afforded ample opportunities to show that he could become a fit parent after paternity testing established that he was K.H.'s natural father.

Moreover, D.S. cannot use his jail time as a crutch to prevent termination. D.S. made the choice to commit crimes. D.S. also made the choice to violate the terms of his probation and parole. In the past, this court has held that repeated criminal convictions and jail sentences can indicate that a parent's conduct or condition is unlikely to change in the foreseeable future. See *In re C.C.*, 29 Kan. App. 2d 950, 954, 34 P.3d 462 (2001); *In re A.N.P.*, 23 Kan. App. 2d 686, 692-93, 934 P.2d 995 (1997). Accordingly, despite D.S.'s contentions to the contrary, D.S.'s continuous legal troubles and inability to change his behavior on probation, and later parole, support the trial court's finding that D.S. was unlikely to change his conduct or conditions in the foreseeable future.

This is especially true since courts must evaluate the foreseeable future from K.H.'s perspective. "The foreseeable future is examined from the perspective of a child because children and adults have different perceptions of time and children have a right to permanency within a time frame reasonable to them." *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). When K.H. was taken into State custody, he was

9

almost 8 months old. When the termination hearing took place he was 2 years and 2 months old, meaning that he had spent 1 1/2 years of his life, or over 70 percent of his life, in State custody. During K.H.'s lifetime, D.S. had committed several crimes, D.S. had been in and out of jail, and even when not in jail, D.S. had made few efforts to be a part of K.H.'s life. Thus, when looking at the foreseeable future from K.H.'s perspective, it is readily apparent that the trial court properly determined that D.S. was not going to change within the foreseeable future.

Furthermore, D.S.'s comparison of his case to *In re H.J.P.*, is misplaced. In *In re H.J.P*, this court held that the trial court erred by terminating H.J.P.'s father's parental rights when he complied with all court orders, completed parenting and anger management classes, completed requested mental evaluations, entered into therapy, became active in H.J.P.'s life, developed a strong bond with H.J.P., and provided a safe home for H.J.P. Here, D.S. avoided paternity testing, complying with the trial court's order to submit to testing only after he was jailed. There is also no evidence that D.S. complied with any of the SFCS reintegration plan except for getting a drug and alcohol evaluation. Even then, however, when the results of the evaluation indicated that he needed counseling, D.S. failed to attend his scheduled counseling session. Additionally, D.S.'s comparison of his case to *In re H.J.P.* is unfounded given: (1) that D.S. admitted that he had not seen K.H. since before he violated his probation in November 2014, meaning there was no bond, let alone a strong bond, between him and K.H.; and (2) that D.S. admitted he had never physically or financially cared for K.H., meaning D.S. never provided any resources to ensure K.H.'s needs were met.

Finally, D.S.'s argument that this court should reverse the trial court's termination ruling because "in this matter we are no closer to an adoption than to a possible reintegration with D.S." fails. It seems that D.S. believes that it is not necessarily in K.H.'s best interests for his parental rights to be terminated because K.H. has not been placed for adoption yet. His reasoning is a logical *non-sequitur*, which means, it does not

10

follow. This is not a valid reason to reverse the trial court's termination ruling. The termination of D.S.'s parental rights is the first step the State must take to ultimately place K.H. for adoption. Upon the termination of parental rights, there is always a period of limbo when parents appeal the trial court's ruling. As the State points out in its brief, D.S.'s appeal stays the ability to place K.H. for adoption. Because the adoption process is automatically delayed as a result of appeal procedures, the existence of this delay cannot be construed as a factor that weighs in a parent's favor against termination. Most importantly, this limbo period does not negate the trial court's underlying unfitness findings or termination ruling.

In summary, although D.S. argues that the trial court erred by finding that he was unlikely to change his unfit conduct or conditions in the foreseeable future, clear and convincing evidence supports the trial court's finding. Moreover, each of D.S.'s arguments why the trial court erred in reaching this finding are fatally flawed. Accordingly, we affirm the trial court's termination ruling.

Affirmed.